853 A.2d 880

ESTATE OF ROBERT FRANKL, DECEASED, BY ADMINISTRA-
TRIX OF THE ESTATE, LORI FRANKL, AND LORI FRANKL,
ERIC FRANKL, ASHLEY FRANKL AND BRIAN FRANKL, IN-
DIVIDUALLY, AND ESTATE OF KAREN BUDIAN, DE-
CEASED, BY ADMINISTRATOR OF THE ESTATE, GEROLF O.
BUDIAN, AND GEROLF O. BUDIAN AND BENJAMIN BUDIAN,
INDIVIDUALLY, GARRY E. SITZE AND TOMMYE SITZE, HIS
WIFE, PLAINTIFFS, v. GOODYEAR TIRE AND RUBBER COM-
PANY, DEFENDANT–RESPONDENT, AND JOHN DOE (A FIC-
TITIOUS NAME REPRESENTING A CLASS OF FICTITIOUS
DEFENDANTS), ABC CORP. (A FICTITIOUS NAME REPRE-
SENTING A CLASS OF FICTITIOUS DEFENDANTS), HUTCH-
INSON INDUSTRIES, INC., HUTCHINSON CORPORATION,
HUTCHINSON, S.A., ROBERT ROE (A FICTITIOUS NAME
REPRESENTING A CLASS OF FICTITIOUS DEFENDANTS),
XYZ CORP. (A FICTITIOUS NAME REPRESENTING A CLASS
OF FICTITIOUS DEFENDANTS), GENERAL MOTORS CORPO-
RATION, ROBERT DOE (A FICTITIOUS NAME REPRESENT-
ING A CLASS OF FICTITIOUS DEFENDANTS), DEF CORP. (A
FICTITIOUS NAME REPRESENTING A CLASS OF FICTI-
TIOUS DEFENDANTS), HAYES LEMMERZ INTERNATIONAL,
INC., JOHN ROE (A FICTITIOUS NAME REPRESENTING A
CLASS OF FICTITIOUS DEFENDANTS) AND GHI CORP. (A
FICTITIOUS NAME REPRESENTING A CLASS OF FICTI-
TIOUS DEFENDANTS), DEFENDANTS, AND CONSUMERS
FOR AUTO RELIABILITY AND SAFETY, INTERVENOR–AP-
PELLANT.

Argued April 27, 2004—Decided July 28, 2004.

*Rebecca E. Epstein,* a member of the District of Columbia bar, argued the cause for appellant (*Wilentz, Goldman & Spitzer,* attorneys; *Ms. Epstein and Jennifer Sarnelli,* on the briefs).

*George W. Rooney, Jr.,* a member of the Ohio bar, argued the cause for respondent (*Kelly, McLaughlin & Foster,* attorneys; *Mr. Rooney, Robert G. Kelly, Jr., Jonathan A. Eron, Jeffrey J. Casto,* a member of the Ohio bar, and *Rachael L. Russo,* a member of the Ohio bar, on the briefs).

*Alan Y. Medvin* submitted a brief on behalf of *amici curiae Public Citizen, Inc., and Center for Auto Safety* (*Medvin & Elberg,* attorneys).

*Bruce S. Rosen* submitted a brief on behalf of *amici curiae The New York Times Company, North Jersey Media Group Inc., New Jersey Chapter of the Society for Professional Journalists, New Jersey Foundation for Open Government and New Jersey Media Lawyers Association* (*McCusker, Anselmi, Rosen, Carvelli & Walsh,* attorneys; *Jennifer A. Borg,* of counsel).

*Anne M. Patterson* and *Maha F. Munayyer* submitted a brief on behalf of *amicus curiae New Jersey Defense Association* (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys).

*Anita R. Hotchkiss* submitted a brief on behalf of *amicus curiae Product Liability Advisory Council, Inc.* (*Porzio, Bromberg & Newman,* attorneys; *Ms. Hotchkiss, Linda Pissott Reig and David C. Uitti,* on the brief).

*John F. Brenner* submitted a brief on behalf of *amicus curiae Pharmaceutical Research and Manufacturers of America* (*McCarter & English,* attorneys).

*Thomas J. Cafferty* and *Arlene M. Turinchak* submitted a brief on behalf of *amici curiae New Jersey Press Association and Reporters Committee for Freedom of the Press* (*McGimpsey & Cafferty,* attorneys).

PER CURIAM.

The full history of this case is set forth in detail in the decision of the Appellate Division. *Estate of Frankl v. Goodyear Tire and Rubber Company,* —— N.J.Super. ——, —— A.2d —— (App.Div. 2003). We recount only those facts and procedures necessary to our disposition.

In July 1997, a General Motors Suburban carrying members of the United States Air Force rolled over while traveling on a highway in Saudi Arabia. Three of the occupants were killed and another passenger was severely injured. The injured passenger and the estates of two of the deceased occupants (collectively plaintiffs) filed a lawsuit against Goodyear Tire & Rubber Co. (Goodyear) and other parties. The suit alleged that the accident was caused by tread separation on the vehicle's Light Truck Load Range E(LRE) tires, manufactured by Goodyear.

In March 2000, plaintiffs and Goodyear, by consent, entered into a "Proposed Stipulation and Protective Order Regarding Pre-Trial Documents to be Produced by Goodyear Tire & Rubber Co." Without making any findings, a trial court signed the Protective Order in July 2000.

Under the terms of the Protective Order, Goodyear was permitted to earmark as confidential certain information it produced during discovery. The parties were prohibited from disclosing any items so designated to any persons other than their "employees, experts or consultants employed and retained in connection with this specific action." In addition, plaintiffs could disseminate confidential materials to "other attorneys with similar cases against Goodyear" provided that Goodyear received proper notice of such disclosure and the recipients of the information agreed to the terms of the Protective Order.

Plaintiffs were entitled to challenge Goodyear's designation of any item as confidential, but were required to treat the disputed items as protected until plaintiffs either obtained Goodyear's written permission to do otherwise or allowed Goodyear reasonable time to obtain a court order finding that the disputed items were protected. Goodyear had the burden of establishing the confidentiality of the disputed items on any such motion to the court. Paragraph 5 of the Protective Order contained a sealing provision that effectively "maintain[ed] protection for confidential information divulged in pre-trial motions or other submissions, subject to the court's ultimate power to find that such materials may be publicly disclosed." The Protective Order also contained a provision requiring plaintiffs to return all confidential materials to Goodyear "upon completion of the trial and any appeals in this case, or upon conclusion of any settlement."

Subsequently, by way of motion and cross-motion, plaintiffs challenged and Goodyear defended the designation of a number of discovery documents as confidential. The materials filed with the court relating to the motion to enforce the confidentiality agreement remained under seal. Although the record is not crystal clear on the subject, apparently thirty-one documents were at issue.

While the motions were pending, Consumers for Auto Reliability and Safety (CARS), a national non-profit automobile and consumer safety organization, filed a motion to intervene in order to

obtain access to the contested documents based on allegations that the tread separation problem had caused a series of accidents and that public safety required access to the discovery in this case.

In the fall of 2001, after briefs had been filed in respect of CARS' motion, a settlement between plaintiffs and defendants was reached. As a result, plaintiffs withdrew their opposition to Goodyear's motion to enforce the Protective Order. That withdrawal occurred sometime prior to the oral argument on CARS' intervention motion in October 2001. On December 18, 2001, the trial court granted CARS's motion to intervene for the purpose of obtaining access to documents produced in discovery in the underlying litigation and denied Goodyear's motion to enforce the Protective Order "without prejudice, subject to a final determination of the validity of the consent order." In so doing, the court specifically rejected Goodyear's argument that unfiled discovery materials are insulated from access. The court also stated that trial judges should not "rubber-stamp Consent Orders containing blanket confidentiality provisions that are not accompanied by extrinsic support demonstrating good cause for their approval." On December 19, 2001, pursuant to the settlement agreement, plaintiffs formally dismissed their claims against Goodyear.

The trial court then offered a "preferable model of practice" for obtaining protective orders suggesting that, as occurred in *Hammock by Hammock v. Hoffman–LaRoche, Inc.*, 142 *N.J.* 356, 662 *A.*2d 546 (1995), applications for confidentiality orders should be supported by affidavits detailing the need for confidentiality. In addition, citations to relevant legal authority should be provided if "governing law is in doubt." "In exceptional instances where a *prima facie* showing of good cause is not clear from the moving papers, or where there are substantial countervailing reasons for denying the order, the parties seeking its entry should be prepared to prove their entitlement in a limited evidentiary hearing[.]" The trial court indicated that it would refer those suggestions to the Civil Practice Committee. The court noted, however, that litigants could bypass those procedures by "entering into a

stipulation of confidentiality, *inter sese,* rather than seeking the Court's imprimatur of their arrangement," and relying on contract law principles for enforcement.

Based on its interpretation of *Hammock, supra,* the trial court concluded that the Protective Order had to be reexamined. In so doing, the court recognized that the affidavit Goodyear filed in support of its motion for confidentiality, "suggests the presence of both trade secrets and self-critical assessment in the Goodyear documents sought by the intervenors" and, therefore, "may have been sufficient to justify entry of the Order" if it had been presented contemporaneously with the order. After reviewing additional briefs and affidavits submitted by CARS and Goodyear and conducting an *in camera* review of the disputed documents, the trial court presented a document-by-document summary of the results of its review.[1] Those individual determinations are not at issue here.

Although recognizing that the unsealed documents remained "subject to the private Stipulation of Confidentiality between Goodyear and the original plaintiffs," the court determined that the private agreement was unenforceable as against an application for public access.

In respect of Goodyear's claim of justifiable reliance on confidentiality, the court found that although Goodyear may have relied on the Protective Order when it produced certain materials during discovery, absolute reliance was not justifiable or reasonable because of the provision allowing plaintiffs to challenge Goodyear's designation of a document as confidential. In addition, the court

---

[1] The trial court ordered full or partial unsealing of fourteen of the contested documents, finding that: *Hammock* was inapplicable because the protective order was invalid; the documents contained important public safety information and the interests of public safety predominated over Goodyear's need for confidentiality; and Goodyear failed to meet the good cause standard because it had not shown the documents contained trade secrets. The court held that a number of contested documents should remain sealed because they contained "self-critical" analysis materials.

noted that reliance on a protective order "should not be outcome determinative and should only be one factor that a court considers when determining whether to modify an order of confidentiality."

Goodyear appealed and the Appellate Division reversed. The panel differed from the trial court on only one specific point. It concluded that neither *Rule* 4:10-3 nor *Hammock, supra,* creates a right of public access to *unfiled* documents exchanged during discovery in civil litigation. Accordingly, the panel held that CARS lacked a legal basis for access to the unfiled documents regardless of whether or not a protective order was in place.

We granted CARS' petition for certification. 178 *N.J.* 452, 841 *A.2d* 90 (2004). We also accorded *amici* status to Public Citizen, Inc., the Center for Auto Safety, the Product Liability Advisory Council, the New Jersey Defense Association, The New York Times,[2] Pharmaceutical Research and Manufacturers of America, and the New Jersey Press Association.[3]

## I

CARS does not advance a common law or a constitutional argument in support of access, but argues only that the good-cause requirement of *Rule* 4:10-3 gives the public the right to seek access to discovery with regard to both filed and unfiled materials. It further argues that important public safety considerations require such access.

Goodyear counters that New Jersey does not recognize a right of access to unfiled documents; that CARS, as an intervenor, has no substantive rights; and that access to unfiled discovery is not

---

[2] The New York Times filed a joint brief with the North Jersey Media Group Inc., the New Jersey Chapter of the Society for Professional Journalists, the New Jersey Foundation for Open Government, and the New Jersey Media Lawyers Association.

[3] The New Jersey Press Association filed a joint brief with the Reporter's Committee for Freedom of the Press.

needed to protect the public from defective products because there are governmental agencies charged with that task.[4]

*Amici* Public Citizen Inc. and the Center for Auto Safety argue, essentially, that "if non-parties are not permitted to question the validity of blanket protective orders, such orders can be routinely used to prevent scrutiny of corporate misconduct, or thwart disclosure of valuable health and safety information."

*Amici* New York Times and the New Jersey Press Association similarly assert that this Court should extend the presumption of public access to unfiled discovery documents in cases involving public hazards or misconduct by government officials. Citing *Hammock, supra, amici* argue that New Jersey common-law supports such an extension. They also argue that stipulated protective orders are not based on individualized findings of good cause as required by *Rule* 4:10–3 and, hence, should not be afforded the same level of protection as a protective order based on good cause findings. Specifically, *amici* argue that *Hammock, supra,* merely acknowledges no presumption of public access to unfiled discovery, but leaves access to such discovery to the "good cause" test in *Rule* 4:10–3.

*Amici* Product Liability Advisory Council and the New Jersey Defense Association argue that the trial court's decision would eviscerate the protective order as a discovery tool because a detailed document-by-document analysis would be prohibitively expensive, and the ability of a third party to intervene would limit parties' willingness to rely on protective orders.

*Amicus curiae* Pharmaceutical Research and Manufacturers of America argues that allowing public access to unfiled discovery in litigation involving the industry would create disincentives for

---

[4] In November 2000, The National Highway Traffic Safety Administration (NHTSA) initiated an investigation of the tire tread separation defect at issue here. The NHTSA closed its investigation in March 2002, after Goodyear put in place a recall program to replace, free of charge, pre–1996 LRE tires with a newer version on ambulances and large vans.

research and development of new drugs because of the inability of the industry to guard its trade secrets. Furthermore, this *amicus* argues the pharmaceutical industry has consistently relied on New Jersey practice, allegedly reinforced by this Court's decision in *Hammock, supra*, that documents produced in discovery will not be placed in the public domain if they are subject to a protective order and are not filed with the court.

## II

*Rule* 4:10-3 provides:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including, but not limited to, one or more of the following:

(a) That the discovery not be had;

(b) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(c) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(d) That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;

(e) That discovery be conducted with no one present except persons designated by the court;

(f) That a deposition after being sealed be opened only by order of the court;

(g) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

(h) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of R. 4:23-1(c) apply to the award of expenses incurred in relation to the motion.

Because we agree with the Appellate Division that that rule is not an independent source of entitlement to public access to discovery documents, but only a procedural device by which documents, otherwise accessible, can be protected, and because *Hammock's* holding does not encompass both filed and unfiled documents, we now affirm.

The universal understanding in the legal community is that unfiled documents in discovery are not subject to public access.[5] *Seattle Times, supra,* 467 *U.S.* at 33, 104 *S.Ct.* 2199; *see also In re Alexander Grant & Co. Litig.,* 820 *F.*2d 352, 355 (11th Cir.1987) (finding appellants' common law right of public access does not extend to discovery not part of public record); *Leucadia, Inc. v. Applied Extrusion Tech. Inc.,* 998 *F.*2d 157, 164 (3d Cir.1993) (holding discovery motions and supporting materials are not subject to presumptive right of access because that would render "raw discovery, ordinarily inaccessible to the public," effectively accessible); *Oklahoma Hosp. Ass'n, supra,* 748 *F.*2d at 1425 (holding parties to stipulated protective order cannot be compelled to distribute unfiled discovery to public); Laurie Kratky Doré, *Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement,* 74 *Notre Dame L.Rev.* 283, 346–48 (1999).

Some legal scholars suggest a need to revisit the notion that unfiled discovery documents are insulated from public access. Professor Arthur Miller details the arguments for and against creating a presumption of public access to all discovery materials in *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 *Harv. L.Rev.* 427 (1991). Some of the arguments for the presumption of public access are as follows: 1) it would advance important societal interests, primarily those of public health, safety, and the administration of public office, interests that often are not represented by parties in the litigation; 2) it would improve the judicial system's overall efficiency by avoiding duplication of discovery efforts; and 3) it would eliminate the conflicts created by the current system whereby an attorney must agree to confidentiality for the current client's benefit despite the

---

[5] Presumably, and absent a protective order, parties may voluntarily disclose discovery documents. *Jepson Inc. v. Makita Elec. Works, Ltd.,* 30 *F.*3d 854, 858 (7th Cir.1994); *see also Seattle Times v. Rhinehart,* 467 *U.S.* 20, 31–36, 104 *S.Ct.* 2199, 81 *L.Ed.*2d 17 (1984); *Public Citizen v. Liggett Group, Inc.,* 858 *F.*2d 775, 780 (1st Cir.1988), *cert. denied,* 488 *U.S.* 1030, 109 *S.Ct.* 838, 102 *L.Ed.*2d 970 (1989); *Oklahoma Hosp. Ass'n v. Oklahoma Publishing Co.,* 748 *F.*2d 1421, 1424 (10th Cir.1984), *cert. denied,* 473 *U.S.* 905, 105 *S.Ct.* 3528, 87 *L.Ed.*2d 652 (1985).

result that potentially harmful information that would benefit the public will be withheld. Miller, *supra,* at 477–82.

The arguments against a presumption of public access include the notions that such access would 1) invade the privacy of litigants and non parties; 2) jeopardize a litigant's right to the exclusive use of private property, including trade secrets and other competitive commercial information; 3) unjustly harm reputation, profitability, and even the viability of socially beneficial ventures; 4) undermine the confidentiality and hence the investment value of important research and development; and 5) limit judicial discretion necessary to advance discovery and litigation generally. *Id.* at 464–74.

Despite the academic debate and state-by-state efforts by the Association of Trial Lawyers of America to obliterate the distinction between filed and unfiled documents in discovery,[6] the distinction remains intact across the nation.[7] Furthermore, the 2000 Amendment to *Fed.R.Civ.P.* 5(d), setting forth that discovery must *not* be filed unless it is "used in the proceeding," bolsters the distinction between filed and unfiled documents and supports the conclusion that unfiled discovery is not meant to be accessible to non-parties. *Fed.R.Civ.P.* 5(d); *and see S.E.C. v. TheStreet.com,* 273 *F.*3d 222, 233 n. 11 (2d Cir.2001) (expressing doubt that *In Re Agent Orange Prod. Liabil. Litig.,* 821 *F.*2d 139, 146 (2d Cir.) (finding presumption of public access to all discovery relying on *Fed.R.Civ.P.* 5(d), which then required that all discovery be filed), *cert. denied* 484 *U.S.* 953, 108 *S.Ct.* 344, 98 *L.Ed.*2d 370 (1987), would survive the new *Fed.R.Civ.P.* 5(d)).[8]

---

[6] *See* Miller, *supra,* at 442–45.

[7] Only two states arguably provide for public access of unfiled discovery, and only upon a showing that public health and safety or the administration of public office are implicated. *Fla. Stat. Ann.* § 69.081; *Tex.R. Civ. P.* 76a (2)(c).

[8] A few federal cases finding a statutory right of access to unfiled discovery relied on *Fed.R.Civ.P.* 26(c) and pre–2000 *Fed.R.Civ.P.* 5(d). *See e.g., Public Citizen, supra.*

Because New Jersey's Court Rules do not address unfiled discovery explicitly, and because *Hammock* has been overread as clearly weighing in on the issue, we refer this matter to the Civil Practice Committee to address whether, going forward, we should maintain the position that unfiled discovery is insulated from forced public access or whether changes are warranted in that approach, and if so, what those changes should entail. Among the questions the Committee should address are the following: Whether unfiled discovery should be immune from public access, presumptively immune, or accessible on the same terms as filed discovery; if accessible, how the burden of going forward and the burden of proof should be allocated; whether some refinement of the good cause standard is in order; and whether there should be some limitation on the public's right of access after the settlement of a case. Those questions are posed by way of example and not limitation.

### III

The judgment of the Appellate Division is affirmed. The issues to which we have adverted are referred to the Civil Practice Committee for consideration.

*For affirmance*—Chief Justice PORITZ and Justice LONG, VERNIERO, LaVECCHIA, ZAZZALI and WALLACE—6.

*Opposed*—None.