955 A.2d 298

GRANT SPINKS, ROBERT KOVACS, AND MICHAEL EXLEY, PLAINTIFFS–RESPONDENTS, v. THE TOWNSHIP OF CLINTON, STEPHEN CLANCY, INDIVIDUALLY AND AS CHIEF OF POLICE OF THE TOWNSHIP OF CLINTON, DWIGHT RUNYON, INDIVIDUALLY AND AS AN EMPLOYEE OF THE TOWNSHIP OF CLINTON, AND WAYNE WEISS, INDIVIDUALLY AND AS AN EMPLOYEE OF THE TOWNSHIP OF CLINTON, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 12, 2008—Decided September 11, 2008.

See also, 402 N.J.Super. 465, 955 A.2d 304, 2008 WL 4159997.

456

Before Judges WEFING, PARKER and LYONS.

*Marianne C. Tolomeo,* argued the cause for appellant The Township of Clinton (*Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman,* attorneys; *Ms. Tolomeo* and *Rosaria Suriano,* on the brief).

*Arthur G. Nevins, Jr.,* argued the cause for respondents.

The opinion of the court was delivered by

LYONS, J.A.D.

Defendant The Township of Clinton (the Township) seeks to bar the release of certain documents, primarily the records of the internal investigation of the Township police department, submitted to the trial court in connection with a summary judgment motion, arguing that disclosure is forbidden by law, and that,

under common-law principles, the Township's interest in confidentiality outweighs the public's interest in accessing the records. Because we find that the trial court properly applied the law to the facts of the case, but did not effectuate the redaction of all of the personal information ordered to be withheld, we affirm in part and remand for further redaction of the record in accordance with the trial judge's order.

On March 27, 2006, Judge Peter A. Buchsbaum granted summary judgment to defendants, the Township and Stephen Clancy,[1] in plaintiffs' action against both defendants alleging violations of 42 *U.S.C.A.* § 1983 and the State Law Against Discrimination, *N.J.S.A.* 10:5-1 to –49. Plaintiffs' challenge to that judgment is the subject of a companion case entitled *Spinks v. Twp. of Clinton,* No. A–4522–05T1.

During discovery, plaintiffs had moved to compel production of the Township's records of its police department's internal affairs investigation, and defendant cross-moved for a protective order. The motions were argued to Judge Buchsbaum on July 19, 2005, and he issued a written opinion on the same date. In a confidentiality order of July 26, 2005, the trial court denied plaintiffs' request for some documents and granted it as to others, subject to an in camera inspection. The *in camera* inspection hearing was conducted on August 8, 2005, during which the trial judge ordered that some documents be sealed and others be released after portions were redacted.

On March 15, 2006, twelve days before the return date of the summary judgment motion decision in the underlying action, defendant sent the trial court a letter asking that the oral argument and ruling on the pending summary judgment motion be conducted in closed court and placed under seal. Defendant reasoned that the need for confidentiality that was the basis of the July 26, 2005, order still existed—that it was necessary to protect

---

[1] Clancy was not a party to this application and, therefore, we refer to defendant in the singular.

the anonymity of witnesses and to conceal the details of the internal affairs investigation.

By letter dated March 16, 2006, the trial court denied defendant's request, explaining that the sealing of records does not equate "to sealing of arguments and decisions." In a March 17, 2006, letter, the trial court stated its intention "to release all pleadings from seal and only retain under seal those supporting documents which themselves were sealed pursuant to [the July 26, 2005,] order of this Court."

On March 22, 2006, a day after defendant sent the trial court a letter objecting to its March 17 ruling, the court reaffirmed its ruling that the July 26, 2005, order did not require that the pleadings be sealed.

On April 6, 2006, defendant moved for an order to show cause seeking to protect certain enumerated documents. Plaintiffs opposed the application, noting among its arguments that the information defendant sought to protect had already been disclosed in newspaper articles and press releases. The motion was argued on April 28, 2006.

By order of May 8, 2006, the trial court directed that certain documents be unsealed. This included documents regarding the complaints that eventually led to the investigation, and documents concerning the general conduct and nature of this investigation, including the need for the investigation, the fact and methods of utilizing the global positioning system (GPS) unit in the vehicles of patrol officers and public announcement of the alleged results of the investigation, and "all circumstances already in the public domain." In addition, the trial court ordered that Paragraph 22 of the Certification in support of the subject Order to Show Cause of Rosaria Suriano, Esq. (Suriano) be unsealed.

In the same order, the judge ordered that the following remain sealed pending his later in camera review:

1) All documents concerning Officer Young;

2) Reports as to and identity of all exonerated officers or officers not named in any criminal investigations;

3) Exhibits E through H attached to plaintiffs' counsel's Certification in Opposition to the subject Order to Show Cause;

4) The CD's and Disks containing the results of the investigation, and any printouts thereof; and

5) All documents listed in paragraph 22 of the Suriano certification referenced in initial paragraph 4 above, except for items ordered unsealed in initial paragraphs 1 to 3 above.

On May 9, 2006, plaintiffs filed their notice of appeal from the March 27 summary judgment. On May 12, 2006, the trial court reviewed the sealed documents at a conference with counsel for both sides. In an order of June 15, 2006, the trial court listed those documents that were to remain under seal, those that were to be unsealed, and those that were to be redacted and then unsealed. Defendant filed a timely notice of appeal from the June 15 order. We stayed the June 15 order pending this appeal.

In its appeal, defendant contends that the trial court wrongly ordered that some of the documents be unsealed. It reasons that the release of those documents should have been barred under the governing common-law balancing process, and also because confidentiality was required by *N.J.S.A.* 40A:14–181, which specified standards and procedures to be followed by a municipal police department in conducting internal-affairs investigations. It also disputes the trial court's rationale that some of the documents had already been disclosed to the public. Conversely, plaintiffs insist that the judge was right to unseal the documents because of the public's interest in knowing the details of how the Township's police department conducted an allegedly unfair and discriminatory investigation.

■ We normally defer to the "trial court's disposition of discovery matters, including the formulation of protective orders, unless the court has abused its discretion." *Payton v. N.J. Tpk. Auth.*, 148 *N.J.* 524, 559, 691 *A.*2d 321 (1997). When the trial court's order is based on a mistaken understanding of the applicable law, however, such deference is inappropriate. *Ibid.*

■ We, therefore, turn to the applicable law. In 1995, our Supreme Court announced New Jersey's standard for allowing

public access to civil litigation court records. *Hammock v. Hoff-mann–LaRoche, Inc.,* 142 *N.J.* 356, 375, 380–83, 662 *A.*2d 546 (1995). The Court began with the premise that "[t]here is a presumption of public access to documents and materials filed with a court in connection with civil litigation. That right exists under the common law as to the litigants and the public." *Id.* at 375, 662 *A.*2d 546. Furthermore, we have also recognized that access is required by the First Amendment. *Lederman v. Prudential Life Ins.,* 385 *N.J.Super.* 307, 316, 897 *A.*2d 362 (App.Div.2006).

 Whether the right of access be grounded in common law or the First Amendment, the right is not absolute. *Hammock, supra,* 142 *N.J.* at 375, 662 *A.*2d 546. The presumption of access may be rebutted with a showing that society's interest in secrecy outweighs the need for access. *Id.* at 375–76, 662 *A.*2d 546. The Court proceeded to "establish a reasonableness standard to determine when the presumption of access may be rebutted." *Id.* at 376, 662 *A.*2d 546.

Such a standard was necessary, observed the Court, because the two applicable court rules provided only a vague "good cause" test for sealing court records. *Ibid.* Thus, *Rule* 1:2–1 forbade the sealing of records "except for good cause shown, which shall be set forth on the record." *Rule* 4:10–3 authorized protective orders "for good cause shown" when necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at 368, 662 *A.*2d 546.

In order to provide structure for a trial court in exercising its discretion to decide the question of "good cause," the *Hammock* Court devised a multi-component standard that would correctly balance the competing interests. *Id.* at 380–82, 662 *A.*2d 546. Among other factors not pertinent here, the Court ruled that "a flexible balancing process adaptable to different circumstances must be conducted to determine whether the need for secrecy substantially outweighs the presumption of access." *Id.* at 381, 662 *A.*2d 546. With respect to the requisite level of proof, the Court directed that

the person who seeks to overcome the strong presumption of access must establish by a preponderance of the evidence that the interest in secrecy outweighs the presumption. The need for secrecy must be demonstrated with specificity as to *each document.* Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient. The same is required to satisfy the "good cause" requirement of *Rule* 1:2–1 and *Rule* 4:10–3 as well as the "justice" requirement of *Rule* 4:10–3.

[*Id.* at 381–82, 662 *A.*2d 546.]

The *Hammock* Court limited its holding to non-discovery materials, cautioning that discovery items must remain confidential until such time as they are filed with the court, for example, as supporting documents in a summary judgment motion. *Id.* at 379–81, 662 *A.*2d 546. *See also Estate of Frankl v. Goodyear Tire,* 181 *N.J.* 1, 9, 12, 853 *A.*2d 880 (2004) (confirming that the *Hammock* analysis applies only to *filed* materials). Also unaffected by its decision were existing public policies or statutes requiring that certain records not be disclosed. *Hammock, supra,* 142 *N.J.* at 380, 662 *A.*2d 546. The Court also explained:

Nor do we intend to change our existing public policy of maintaining confidentiality in matters such as certain aspects of divorce proceedings, child-custody disputes, juvenile-justice proceedings, proceedings involving trade secrets or as otherwise provided by law. Those are either private or confidential matters in which the government's interest outweighs the presumption of access.

[*Ibid.*]

In this case, defendant appears to argue that "as otherwise provided by law" encompasses *N.J.S.A.* 40A:14–181. That statute requires that each law enforcement agency in the State adopt and implement guidelines consistent with the "Internal Affairs [(IA)] Policy and Procedures" of the Police Management Manual in establishing and conducting investigations. That manual, in turn, declares that investigatory records "shall be restricted." The Township further relies on four sections therein that deal with the confidential nature of investigations, as well as the physical security measures to be taken to safeguard information concerning investigations which disclose internal affairs methodologies, techniques, and personal information.

After examining the manual and the applicable law, we agree with the trial court's conclusion that *N.J.S.A.* 40A:14–181 is not

the kind of "law" which would require secrecy as envisioned by the Hammock Court. First, the statute itself says nothing about confidentiality of investigative documents. Rather, it requires that all law enforcement agencies adopt "guidelines" that are consistent with tenure or civil service laws, contractual agreements, and the IA Policy. The IA Policy and Procedures itself encompasses in its eighty-seven pages all aspects of internal investigations, of which the section addressing record-keeping and confidentiality comprises just five pages. Nothing in those five pages purports to forbid disclosure of investigative documents once they have been filed as part of the record in a court case. It allows release to an attorney representing a disciplined officer in a lawsuit or upon "a court order." It also permits access in any other circumstances "for good cause."

The Township also argues that *Loigman v. Kimmelman*, 102 *N.J.* 98, 505 *A.*2d 958 (1986) supports its position. We disagree. The Township's reliance on *Loigman* is misplaced. We agree with the trial court that *Hammock, supra*, 142 *N.J.* at 356, 662 *A.*2d 546, not *Loigman*, is the governing authority. In *Loigman*, plaintiff sought government documents under the State's "Right to Know Law," *N.J.S.A.* 47:1A-1 to -4. In *Hammock*, much like the facts here, a party sought documents filed with the court in the course of a legal proceeding. We further agree with the trial court's determination that the Court in *Estate of Frankl, supra*, 181 *N.J.* at 9, 12, 853 *A.*2d 880, "made it clear that *Hammock* is still good law as to documents filed in court."

■ Defendant's third and last challenge is to the trial court's conclusion that some documents should be unsealed because their contents had already been revealed to the public. Defendant complains that "the information already disclosed was not sufficient to compel disclosure of the entire investigation." It summarizes the key information revealed by various newspaper articles, and it concludes that "any information provided in the newspaper articles regarding the initiation of the investigation and the precise methodology was not detailed." Defendant elaborates:

The foregoing articles are a far cry from the detailed information in the Internal Affairs file that the trial court unsealed. Simply, disclosure of the utilization of a GPS tracking system does not, in and of itself, reveal the precise reasons why the system was implemented, all of the data and facts disclosed by the use of such system, and the analysis of the data by law enforcement personnel—in other words, all the detailed information in the Internal Affairs file that was unsealed by the trial court.

In response, plaintiffs review the same articles and press releases and draw a contrary conclusion, in agreement with the trial court, that the key information was communicated to the public and, hence, need not be kept confidential. In its reply brief, defendant continues to insist that "the scope of information revealed in the 'Media Releases' was quite narrow and could not [possibly] constitute a waiver of the confidential status of the entire investigative file."

Defendant does not, however, identify those documents unsealed by the judge that would provide impermissible detail of a kind not already revealed in the articles and releases. Instead, defendant rests on the representation, without citation, that the articles did not include "all the detailed information" contained in the unsealed material. Defendant generally characterizes that information— "the precise reasons why the system was implemented, all of the data and facts disclosed by the use of such system, and the analysis of the data by law enforcement personnel"—but it does not identify the particular documents that it implies *would* reveal that kind of detail.

It is defendant's, not the court's, burden to provide the specific examples of information contained in the 552 pages of the Confidential Appendix to support its argument. *State v. Hild,* 148 *N.J.Super.* 294, 296, 372 *A.*2d 642 (App.Div.1977). The Supreme Court confirmed this when it held that a party seeking to overcome the presumption of access to court-filed documents must show a need for secrecy "with specificity as to *each document*;" unsubstantiated claims of harm will be insufficient. *Hammock, supra,* 142 *N.J.* at 381–82, 662 *A.*2d 546.

 Lastly, by asking us to seal all "of the Internal Affairs documents and materials used or referred to by parties on the motions for summary judgment," defendant implicitly asks us to seal the data contained on several disks and CDs. We have spent considerable court resources to decode these disks and CDs, albeit unsuccessfully. It is the burden of the party seeking to exclude information to provide the data to the court in a medium and in a format that may be readily interpreted.[2] Therefore, we were unable to parse through the material and independently ascertain a basis for preventing the disclosure of this information.

Accordingly, we affirm Judge Buchsbaum's June 15, 2006, order. However, in our review of the Confidential Appendix, referred to by the trial judge as "Exhibit P," we found names and other identifying information that were not properly redacted in accordance with the trial judge's June 15, 2006, order.[3] Consequently, the June 15, 2006, order is affirmed, but remanded so that the names and other identifying information may be redacted consistent with the trial judge's order.

---

[2] Our Court has said, in other circumstances, that "[i]t is no small burden to acquire an accurate translation." *Alfonso v. Bd. of Review*, 89 *N.J.* 41, 50, 444 A.2d 1075 (1982). Equally as burdensome is the challenge of translating raw information into a readable format. That burden does not correctly belong to the courts.

[3] For example, pages Dca227, 247, 253, and 297 contain names of officers that were ordered redacted, and page Dca381 contains Social Security numbers.