24 A.3d 829 (2011)
421 N.J. Super. 489
DRINKER BIDDLE & REATH LLP, Plaintiff-Appellant,
v.
NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF LAW, Defendant-Respondent.
No. A-2387-09T3.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 2011.
Decided August 18, 2011.
*831 John P. Mitchell, argued the cause for pro se appellant (Drinker, Biddle & Reath LLP, attorneys; William L. Warren, and Mr. Mitchell, Princeton, on the brief).
Richard F. Engel, Chief Deputy Attorney General, argued the cause for respondent (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel and on the brief; Edward Devine, Deputy Attorney General, on the brief).
Before Judges CUFF, SIMONELLI and FASCIALE.
The opinion of the court was delivered by
SIMONELLI, J.A.D.
In this appeal we consider whether unfiled discovery in an environmental lawsuit brought by the New Jersey Department *832 of Environmental Protection (NJDEP) against ExxonMobil Corp. (the Exxon litigation) is subject to access pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, or the common-law right of access. We hold that N.J.S.A. 47:1A-9b exempts unfiled discovery from disclosure; however, we reverse the dismissal of plaintiff Drinker, Biddle & Reath LLP's (Drinker) common-law right of access claim, and remand for the court to conduct the appropriate common-law balancing test.
The facts are undisputed. On November 5, 2008, Drinker submitted an OPRA request for copies of the transcripts from the depositions of three of Exxon's experts, which private counsel representing the NJDEP took during the Exxon litigation.[1] The transcripts in their entirety have not been filed with the court.[2] Defendant New Jersey Department of Law and Public Safety, Division of Law (the Division) denied Drinker's OPRA request, stating,
We have carefully considered your request. You are seeking access to unfiled discovery material. These records are exempt from public disclosure pursuant to [N.J.S.A.] 47:1A-9[b]. Judicial case law recognizes that unfiled discovery is not subject to public access. [See, e.g., Estate of Frankl v. Goodyear Tire & Rubber Co., 181 N.J. 1, 853 A.2d 880 (2004)]. The Division of Law has determined not to waive its privilege to maintain the confidentiality of the unfiled discovery in question here.
Drinker filed an order to show cause and verified complaint in lieu of prerogative writs alleging a violation of OPRA, the common-law right of access, and the federal and State constitutions. At oral argument on the order to show cause, Drinker argued that the transcripts are government records subject to access under OPRA in the absence of a confidentiality order, and OPRA does not exclude unfiled discovery documents from access. Drinker also argued that Frankl, supra, 181 N.J. 1, 853 A.2d 880, only establishes an exception for court records, Gannett New Jersey Partners v. County of Middlesex, 379 N.J.Super. 205, 877 A.2d 330 (App.Div. 2005), supports access, and the State failed to demonstrate that the Legislature intended to exclude unfiled discovery documents from the ambit of OPRA.
The trial judge dismissed Drinker's OPRA claim, concluding, in part, that the transcripts were not subject to access pursuant to N.J.S.A. 47:1A-9b. The statute incorporates the grant of confidentiality to unfiled discovery documents established or recognized by pre-OPRA case law, such as, In re Alexander Grant & Co. Litigation, 820 F.2d 352, 355 (11th Cir.1987), and Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 662 A.2d 546 (1995), which the judge referenced in his reasoning.[3] The judge also concluded that post-OPRA case law, such as, Frankl, supra, and Spinks v. Township of Clinton, 402 N.J.Super. 454, 955 A.2d 298 (App.Div. 2008), maintained "a historically and nationally *833 recognized distinction between filed and unfiled discovery."[4]
The judge also dismissed Drinker's common-law right-of-access claim. The judge questioned whether the transcripts fell under the common-law definition of "public records." Nevertheless, he concluded that Drinker failed to state a personal interest in obtaining the transcripts, and its asserted general public interest in the Exxon litigation "does not provide adequate basis for this [c]ourt to direct a ruling in favor of [Drinker] in light of the abundance of authority protecting unfiled discovery information."[5] This appeal followed.
On appeal, Drinker contends, and the State does not dispute, that the transcripts are government records under both OPRA and the common law. Drinker also contends there is no OPRA exemption for unfiled discovery documents, no case law has established that OPRA exempts unfiled discovery in a public agency's possession, and the Division could have, but did not, seek a confidentiality order in the Exxon litigation for the unfiled deposition transcripts. Drinker further contends it has a common-law right of access based on the public's interest in the State's use of resources in pursuing the Exxon litigation, and the State has no legitimate interest in maintaining the transcripts' confidentiality.
"We review de novo the issue of whether access to public records under OPRA and the manner of its effectuation are warranted." MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J.Super. 534, 543, 868 A.2d 1067 (App. Div.2005). We apply the same standard of review to the court's legal conclusions with respect to whether access to public records is appropriate under the common-law right of access. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
The Legislature enacted OPRA with the purpose of "`maximiz[ing] public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Mason v. City of Hoboken, 196 N.J. 51, 64, 951 A.2d 1017 (2008) (citation omitted). "OPRA is designed to advance this policy by broadly defining `government records,' N.J.S.A. 47:1A-1.1, and by publicly declaring that they shall be accessible, N.J.S.A. 47:1A-1." Kovalcik v. Somerset Cnty. Prosecutor's Office, 206 N.J. 581, 588, 21 A.3d 1142 (2011). However, "the right to disclosure is not unlimited, because. . . OPRA itself makes plain that `the public's right of access [is] not absolute.' That conclusion rests on the fact that OPRA exempts numerous categories of documents and information from disclosure." Ibid. (alteration in original) (quoting Educ. Law Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 284, 966 A.2d 1054 (2009)). One such exemption is set forth in N.J.S.A. 47:1A-9b, which provides as follows:

*834 The provisions of this act . . . shall not abrogate or erode any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access to a public record or government record.

[(Emphasis added).]
By its plain language, N.J.S.A. 47:1A-9b applies, without limitation, to any grant of confidentiality previously established or recognized by judicial case law. Judicial case law has long established or recognized, without limitation, the confidentiality of unfiled discovery. See, e.g., Seattle Times, supra, 467 U.S. at 33, 104 S.Ct. at 2207-08, 81 L.Ed.2d at 27 ("[P]retrial depositions and interrogatories are not public components of a civil trial. . . . Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 164 (3d Cir.1993) (indicating that discovery motions and supporting materials ought not be subject to a presumptive right of access because that would render "raw discovery, ordinarily inaccessible to the public," effectively accessible); In re Alexander Grant, supra, 820 F.2d at 355 (holding that the common-law right of access does not extend to unfiled discovery documents); Keddie v. Rutgers, The State Univ., 148 N.J. 36, 51, 689 A.2d 702 (1997) (holding that "[o]nce the records and documents were filed with courts . . . without being sealed, Rutgers no longer retained any expectation of confidentiality in them"); Hammock, supra, 142 N.J. at 379, 662 A.2d 546 (recognizing that "there must continue to be confidentiality of [unfiled] materials submitted in the discovery process"). These cases constitute judicial case law that established or recognized the confidentiality of unfiled discovery prior to OPRA's enactment within the intent of N.J.S.A. 47:1A-9b. Cf. Gannett, supra, 379 N.J.Super. at 216-17, 877 A.2d 330 (holding that pre-OPRA case law established or recognized the confidentiality of a county administrator's telephone billing records). Accordingly, the judge properly denied access to the unfiled deposition transcripts pursuant to N.J.S.A. 47:1A-9b.
We reach a different conclusion as to Drinker's common-law right-of-access claim. Whether the transcripts are accessible under the common law requires a three-step analysis, including the consideration of certain factors and not only the fact that the documents sought are unfiled discovery. See Keddie, supra, 148 N.J. at 50, 689 A.2d 702.
"The common law right [of access] can reach a wider array of documents than its statutory counterpart [OPRA]." Educ. Law Ctr., supra, 198 N.J. at 302, 966 A.2d 1054 (citing Higg-A-Rella, Inc. v. Cnty. of Essex, 141 N.J. 35, 46, 660 A.2d 1163 (1995)); see also Home News v. State, Dep't of Health, 144 N.J. 446, 453, 677 A.2d 195 (1996). "However, the common-law right of access is not absolute." S. N.J. Newspapers, Inc. v. Twp. of Mt. Laurel, 141 N.J. 56, 72, 660 A.2d 1173 (1995); see also Home News, supra, 144 N.J. at 453, 677 A.2d 195.
The common-law right to access public records depends on three requirements: (1) the records must be common-law public documents; (2) the person seeking access must establish an interest in the subject matter of the material; and (3) the citizen's right to access must be balanced against the State's interest in preventing disclosure.
[Keddie, supra, 148 N.J. at 50, 689 A.2d 702 (citations and internal quotation marks omitted).]
The first step of the analysis requires the court to determine whether the *835 documents sought are common-law public records. Ibid. "The common-law definition of public record is broader than the [OPRA] definition." S. N.J. Newspapers, supra, 141 N.J. at 71, 660 A.2d 1173. "Simply stated, a common-law public record is a record made by public officers in the exercise of public functions." Id. at 72, 660 A.2d 1173 (citation and internal quotation marks omitted). The Division does not dispute that the transcripts are common-law public records.
The next step requires the court to determine whether the plaintiff has "`an interest in the subject matter of the material.'" Keddie, supra, 148 N.J. at 50, 689 A.2d 702 (citation omitted). "`The requisite interest necessary to accord a plaintiff standing to obtain copies of public records may be either a wholesome public interest or a legitimate private interest.'" Educ. Law Ctr., supra, 198 N.J. at 302, 966 A.2d 1054 (quoting Higg-A-Rella, supra, 141 N.J. at 47, 660 A.2d 1163); see also Keddie, supra, 148 N.J. at 51, 689 A.2d 702; Home News, supra, 144 N.J. at 454, 677 A.2d 195. "[T]he applicant's interest need not be personal; thus, a citizen's concern about a public problem is a sufficient interest for purposes of standing." Home News, supra, 144 N.J. at 454, 677 A.2d 195. The Division does not dispute that Drinker has a public interest in the transcripts.
The last step requires the court to "balance the plaintiff's interest in the information against the public interest in confidentiality of the documents, including a consideration of whether the demand for inspection is premised upon a purpose [that] tends to advance or further a wholesome public interest or a legitimate private interest." S. N.J. Newspapers, supra, 141 N.J. at 72, 660 A.2d 1173 (alteration in original) (citations and internal quotation marks omitted). "Where `reasons for maintaining a high degree of confidentiality in the public records are present, even when the citizen asserts a public interest in the information, more than [the] citizen's status and good faith are necessary to call for production of the documents.'" Ibid. (alteration in original) (quoting Loigman v. Kimmelman, 102 N.J. 98, 106, 505 A.2d 958 (1986)). In making its determination, the court must consider the following factors:
"(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials."
[Educ. Law Ctr., supra, 198 N.J. at 303, 966 A.2d 1054 (quoting Loigman, supra, 102 N.J. at 113, 505 A.2d 958).]
"`[T]he court should balance [a]gainst these and any other relevant factors . . . the importance of the information sought to the plaintiff's vindication of the public interest.'" S. N.J. Newspapers, supra, 141 N.J. at 73, 660 A.2d 1173 (second alteration in original) (quoting S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 488, 591 A.2d 921 (1991)). "[T]he court must evaluate carefully the public interest that plaintiff seeks to vindicate in requesting those documents and the relevance *836 of the information sought to. . . plaintiff's vindication of [that] public interest. The information that the court releases will depend on plaintiff's actual interest in obtaining access to that information." Id. at 77, 660 A.2d 1173 (second alteration in original) (citation and internal quotation marks omitted).
In this case, the judge merely relied on the rule that unfiled discovery is not accessible to balance Drinker's interest in the transcripts against the public's interest in preserving their confidentiality. Although the judge mentioned the Loigman factors, he did not consider them, nor did he carefully evaluate Drinker's asserted public interest or whether the transcripts are relevant to the vindication of that public interest. Accordingly, we remand for the court to conduct the appropriate balancing test.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The NJDEP sought damages against Exxon for the pollution of hundreds of acres at the Bayway Refinery in Linden. That matter is still pending.
[2] Excerpts of the transcripts were filed in connection with various motions in the Exxon litigation. There is no dispute that Drinker is entitled to copies of the filed portions of the transcripts. See R. 1:38-1, -2(a)(1).
[3] The judge also stated that "a variety of non-binding judicial precedents effective prior to the enactment of OPRA persuaded the Supreme Court to protect unfiled discovery documents from public access." We assume he was referring to the Supreme Court's holding in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
[4] The judge also referenced Rule 1:38 in his decision; however, the Rule was not relevant to his ultimate holding that case law established the confidentiality of unfiled documents. On appeal, the Division argues that the newly adopted Rule 1:38-2 establishes confidentiality. However, Rule 1:38-2 is inapplicable because Rule 1:38 only governs public access to "court records" and, thus, has no bearing on this case except to the extent it recognizes the unfiled discovery rule. See R. 1:38-2(b)(2).
[5] The judge also dismissed Drinker's constitutional claims. Because Drinker does not address these claims in its merits brief, we consider those claims abandoned. W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J.Super. 455, 459, 937 A.2d 1022 (App.Div.2008); Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 2:6-2 (2011).