66 A.3d 244

DRINKER BIDDLE & REATH LLP, PLAINTIFF, v. NEW JERSEY
DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION
OF LAW, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided December 18, 2012—May 14, 2013.

*John P. Mitchell* for plaintiff pro se.

*Richard F. Engel,* Deputy Attorney General for defendant (*Jeffrey S. Chiesa,* Attorney General, attorney).

INNES, P.J.Ch.

This matter is before the court on remand from the Superior Court of New Jersey, Appellate Division. *Drinker Biddle & Reath LLP v. N.J. Dep't of Law & Pub. Safety,* 421 *N.J.Super.* 489, 24 *A.*3d 829 (App.Div.2011). The matter was originally before the court on a complaint in lieu of prerogative writs and related order to show cause filed by plaintiff, Drinker Biddle & Reath LLP, against defendant, New Jersey Department of Law and Public Safety, Division of Law. The complaint alleges the failure of defendant to comply with the Open Public Records Act, *N.J.S.A.* 47:1A–1 to 47:1A–13 ("OPRA"), and the common-law right of access in refusing to provide plaintiff with copies of the unfiled transcripts of discovery depositions of expert witnesses in environmental litigation brought by the State of New Jersey, Department

of Environmental Protection ("NJDEP") against ExxonMobil Corp ("Exxon").

In its decision, the Appellate Division set forth the history of this case:

On November 5, 2008, Drinker submitted an OPRA request for copies of the transcripts from the depositions of three of Exxon's experts, which private counsel representing the NJDEP took during the Exxon litigation. The transcripts in their entirety have not been filed with the court. Defendant New Jersey Department of Law and Public Safety, Division of Law ("the Division") denied Drinker's OPRA request, stating,

We have carefully considered your request. You are seeking access to unfiled discovery material. These records are exempt from public disclosure pursuant to [*N.J.S.A.*] 47:1A–9[b]. Judicial case law recognizes that unfiled discovery is not subject to public access. [*See, e.g., Estate of Frankl v. Goodyear Tire & Rubber Co.,* 181 *N.J.* 1, 853 *A.*2d 880 (2004)*].* The Division of Law has determined not to waive its privilege to maintain the confidentiality of the unfiled discovery in question here.

Drinker filed an order to show cause and verified complaint in lieu of prerogative writs alleging a violation of OPRA, the common-law right of access, and the federal and State constitutions. At oral argument on the order to show cause, Drinker argued that the transcripts are government records subject to access under OPRA in the absence of a confidentiality order, and OPRA does not exclude unfiled discovery documents from access. Drinker also argued that *Frankl, supra,* 181 *N.J.* 1 [853 *A.*2d 880], only establishes an exception for court records, *Gannett New Jersey Partners v. County of Middlesex,* 379 *N.J.Super.* 205 [877 *A.*2d 330] (App.Div.2005), supports access, and the State failed to demonstrate that the Legislature intended to exclude unfiled discovery documents from the ambit of OPRA.

The trial judge dismissed Drinker's OPRA claim, concluding, in part, that the transcripts were not subject to access pursuant to *N.J.S.A.* 47:1A–9(b). The statute incorporates the grant of confidentiality to unfiled discovery documents established or recognized by pre-OPRA case law, such as, *In re Alexander Grant & Co. Litigation,* 820 *F.*2d 352, 355 (11th Cir.1987), and *Hammock v. Hoffmann– LaRoche, Inc.,* 142 *N.J.* 356 [662 *A.*2d 546] (1995), which the judge referenced in his reasoning. The judge also concluded that post-OPRA case law, such as, *Frankl, supra,* and *Spinks v. Township of Clinton,* 402 *N.J.Super.* 454 [955 *A.*2d 298] (App.Div.2008), maintained "a historically and nationally recognized distinction between filed and unfiled discovery."

The judge also dismissed Drinker's common-law right-of-access claim. The judge questioned whether the transcripts fell under the common-law definition of "public records." Nevertheless, he concluded that Drinker failed to state a personal interest in obtaining the transcripts, and its asserted general public interest in the Exxon litigation "does not provide adequate basis for this [c]ourt to

direct a ruling in favor of [Drinker] in light of the abundance of authority protecting unfiled discovery information." This appeal followed.

[*Drinker Biddle & Reath, supra*, 421 *N.J.Super.* at 494–497, 24 *A.*3d 829 (footnotes omitted)].

The Appellate Division affirmed this court's decision denying the plaintiff's request for disclosure of the materials under OPRA, but directed this court to conduct a balancing test to determine if the unfiled discovery deposition transcripts of the examination of Exxon's expert witnesses in the environmental litigation instituted by the State against Exxon are accessible by Drinker under the common-law right to access public records.[1]

Subsequent to the appellate court decision, this court directed the parties to submit additional briefs on the matter. The court conducted oral argument on October 5, 2012. During oral argument, the court directed the deputy attorney general to contact Exxon's counsel in the environmental case to advise the court of Exxon's concerns or position on the issue of whether the transcripts should be provided to plaintiff under a common-law right to access claim. On October 18, 2012, the court received a letter from counsel for Exxon advising the court that Exxon has no position or concerns about the issues before the court.

In its decision, the appellate court accepted plaintiff's position that the unfiled transcripts are common law public records and that plaintiff has a public interest in the transcripts. On the latter point, the court recognized plaintiff's "common-law right of access based on the public's interest in the State's use of resources in pursuing the Exxon litigation." *Drinker Biddle & Reath, supra*, 421 *N.J.Super.* at 496, 24 *A.*3d 829. For the purpose of this remand, this court must be guided by the appellate court on its findings that the materials sought are public records under the common-law right of access and that plaintiff has an interest in the materials.

---

[1] This court dismissed plaintiff's constitutional claims. The Appellate Division found plaintiff abandoned those claims on appeal. *Drinker Biddle & Reath, supra*, 421 *N.J.Super.* at 496 n. 5, 24 *A.*3d 829.

At oral argument on the remand before this court, plaintiff asserted the general societal interest in the manner in which the State was prosecuting the Exxon litigation, and also stated that its private interest was its representation of parties on both sides of environmental litigation, including cases brought against its clients by the State of New Jersey. This court must now proceed "to balance the plaintiff's interest in the information against the public interest in confidentiality of the documents, including a consideration of whether the demand for inspection is premised upon a purpose [that] tends to advance or further a wholesome public interest of a legitimate private interest." *Id.*, at 500, 24 *A.*3d 829 (citing *S. N.J. Newspapers, Inc. v. Twp. of Mt. Laurel,* 141 *N.J.* 56, 72, 660 *A.*2d 1173 (1995)).

The New Jersey Supreme Court set forth the following non-exhaustive factors for the court to consider in reviewing a request for public records under the common-law right to access:

"(1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decisionmaking will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials."

[*Educ. Law Ctr. v. N.J. Dep't of Educ.*, 198 *N.J.* 274, 303, 966 *A.*2d 1054 (2009) (quoting *Loigman v. Kimmelman,* 102 *N.J.* 98, 113, 505 *A.*2d 958 (1986)).]

██ Initially, this court notes that, with the exception of number three ("the extent to which agency self-evaluation, program improvement or other decisionmaking will be chilled by disclosure") and number six ("whether investigatory proceedings have arisen"), the factors set forth in *Loigman* do not lend themselves easily to the sort of documents plaintiff is seeking in this case. To illustrate, unfiled discovery materials would have no effect one way or the other on the decision by citizens to provide information to the government (*Loigman* factor number one); nor would such

disclosure have an effect on citizens who provide information to the government based on assurances of confidentiality (*Loigman* factor number two); nor would such disclosure involve evaluative data of policymakers (*Loigman* factor number four) or public misconduct (*Loigman* factor number five).

The *Loigman* factors apply much easier to more traditional sorts of public records, i.e., records that are either prepared by the public official or provided to the public official by another person to be maintained by the public official. *See Nero v. Hyland,* 76 *N.J.* 213, 222, 386 *A.*2d 846 (1978). Unfiled discovery materials fit neither of these categories. The deposition transcripts are not ministerially created or stored, without any deliberation or creative thought. Rather, the transcripts provide an intimate look into the thoughts and mental processes of the attorney and provide critical insight into the attorney's methods and trial strategy. As stated by the Supreme Court in a case addressing the issue of disclosure of unfiled litigation materials, "Obviously, the need for confidentiality is greater in pending matters than in closed cases. [In both], attorney work product and documents containing legal strategies may be entitled to protection from disclosure." *Keddie v. Rutgers,* 148 *N.J.* 36, 54, 689 *A.*2d 702 (1997).

It is clear to this court that disclosure of the unfiled deposition transcripts could have a serious effect on agency decisionmaking and the investigatory proceedings instituted by the State against alleged polluters. Plaintiff, as the representative of parties against whom the State may prosecute environmental actions, will be privy to the mental processes and strategy of the attorneys representing the State in those matters. The State, on the other hand, would have no reciprocal right to the unfiled discovery in the custody of plaintiff and other private attorneys who represent parties in environmental litigation. The State would obviously be at a severe disadvantage in prosecuting such matters.

The list of factors set forth by the Court in *Loigman* is not exclusive. "The court should balance [a]gainst these and any

other relevant factors ... the importance of the information sought to the plaintiff's vindication of the public interest." *S. N.J. Newspapers, Inc., supra,* 141 *N.J.* at 73, 660 *A.*2d 1173. If the State establishes that the records are privileged, the citizen must overcome a presumption of nondisclosure by asserting a substantial and compelling need for them. *In re the Liquidation of Integrity Ins. Co.,* 165 *N.J.* 75, 85, 754 *A.*2d 1177 (2000).

The protection afforded unfiled discovery documents has been long-standing. *See Estate of Frankl, supra,* 181 *N.J.* at 10, 853 *A.*2d 880; Arthur R. Miller, *Confidentiality, Protective Orders, and Pub. Access to the Courts,* 105 *Harv. L. Rev.* 427 (1991). Unrestricted public access to unfiled discovery documents may:

(1) invade the privacy of litigants and non-parties, (2) jeopardize a litigant's right to the exclusive use of private property, including trade secrets and other competitive commercial information, (3) unjustly harm reputation, profitability and even the viability of socially beneficial ventures, (4) undermine the confidentiality and hence the investment value of important research and development, and (5) limit judicial discretion necessary to advance discovery in litigation, generally.

[*In re Alexander Grant & Co. Litig., supra,* 820 *F.*2d at 355.]

As this court stated in its original decision in this matter, plaintiff's claim that the public policy favors public access to unfiled discovery in public sector litigation is not supported by law. Plaintiff cites no law in support of its position.

The court rejects the notion that government agencies will escape scrutiny over their handling of litigation if unfiled discovery materials are not accessible. To the contrary, the public accessibility of documents filed with the court ensures that litigation conduct will not escape public oversight. *See R.* 1:38–1 to 1:38–13. This, in fact, is the case here, where plaintiff has already obtained portions of the deposition transcripts which have been filed with the trial court in connection with pretrial motions in the environmental litigation.

The court finds a substantial need for the protection of unfiled discovery information in a case such as this, where the State, as a party in environmental litigation, is seeking to perform its obligation to represent its citizens in an effort to safeguard and to

protect the public and the public interest. Stated simply, the general societal interest and the pecuniary private interest of itself and its clients asserted by the plaintiff in support of its application do not outweigh the State's substantial interest in favor of confidentiality of unfiled discovery materials.

For these reasons, the court denies the plaintiff's demand for production of the documents. Defendant is to provide the court with a form of order.