**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4154-19

SARAH DUSENBERY,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued June 21, 2022 – Decided July 1, 2022

Before Judges Fisher, Vernoia and Firko.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. x-xx4461.

Donald C. Barbati argued the cause for appellant (Crivelli & Barbati, LLC, attorneys; Donald C. Barbati, on the briefs).

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Robert Seymour Garrison, Jr., Director of Legal Affairs, PFRSNJ, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Sarah Dusenbery appeals from a final decision of the Board of Trustees (the Board) of the Police and Firemen's Retirement System (PFRS),denying her application for an accidental disability retirement pension and awarding her an ordinary disability pension.[1] The Board denied Dusenbery's application for an accidental disability retirement pension based on its adoption of an administrative law judge's (ALJ) finding Dusenbery's disability did not result from a traumatic event that was "undesigned and unexpected" under the standard established in Richardson v. Board of Trustees, Police & Fireman's Retirement System, 192 N.J. 189 (2007). We reverse.

Dusenbery had been employed as a corrections officer by the Department of Corrections for three years when, on August 6, 2016, she suffered injuries during an incident with an inmate at South Woods State Prison (South Woods). After removing an inmate from a cell she intended to search, Dusenbery attempted to conduct a pat-down search of the inmate, first by requiring the inmate to stand in front of her with his legs spread apart. As Dusenbery began

_____

[1] "[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Thompson v. Bd. of Trustees, Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 484 (App. Div. 2017), aff'd o.b., 233 N.J. 232 (2018) (quoting Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008)).

A-4154-19

patting down the inmate, he started moving and Dusenbery ordered him to stop. The inmate disregarded the orders and continued to move while Dusenbery attempted to pat him down.

During Dusenbery's efforts to continue the pat down search, the inmate elbowed Dusenbery in her right temple, causing her to fall to the ground. Dusenbery immediately felt "searing pain" in her left hip and groin as her body turned to the right as she fell. After struggling with the inmate for approximately three minutes, Dusenbery subdued and handcuffed him. Other officers responded and removed the inmate from the area.

Dusenbery was unable to stand after the incident due to weakness in her left leg. She reported suffering from pain in her left knee, right foot, right shoulder, and the right side of her head. She was assisted by another officer to stand, escorted to the prison infirmary, and later brought to the hospital, where x-rays were taken of her left hip and right shoulder.

One month later, Dusenbery's personal physician ordered MRIs of her lumbar spine and left hip. The physician subsequently ordered an MR arthrogram of her left hip. The doctor diagnosed Dusenbery with a ligament sprain of the lumbar spine, a right shoulder joint sprain, pain in her right shoulder and left hip, and trochanteric bursitis of the left hip.

 A-4154-19

Dusenbery later underwent a functional capacity examination for the purpose of determining whether she could continue to perform the requirements of her employment as a corrections officer. Due to the medical issues related to her hip and lower back, it was determined she was unable to perform all the duties of a corrections officer. Dusenbery engaged in physical therapy and sought treatment from another physician, but she was never medically cleared to return to work.

Dusenbery filed an application with PFRS for an accidental disability retirement pension. The application sought the pension based on the August 6, 2016 incident at South Woods Prison and also a January 4, 2015 incident at Albert C. Wagner Correctional Facility (Wagner). The Board denied the application, finding Dusenbery did not qualify for an accidental disability retirement pension because she is "not totally and permanently disabled either mentally or physically from the performance of her regular and assigned duties" as a result of the two incidents. The Board also found Dusenbery ineligible for an accidental disability pension because "the incident of January 4, 2015, is not considered undesigned and unexpected."[2]

---

[2] The Board did not make a similar finding concerning the August 6, 2016 incident.

A-4154-19

Dusenbery appealed from the denial, and the Board referred the matter to the Office of Administrative Law for a hearing before an ALJ. Following a two-day hearing, the ALJ issued an initial decision summarizing the evidence, noting the parties' stipulation of certain facts, and making detailed findings of fact. The parties stipulated that Dusenbery's initial application for an accidental disability retirement pension was based on the August 6, 2016 incident at South Woods, and the application was later amended to include the January 4, 2015 incident at Wagner. The parties also stipulated that Dusenbery retired from her position as a corrections officer in 2017.

Based on her review of the evidence, the ALJ found Dusenbery suffered injuries to her left hip and lower back in a 2013 automobile accident. Dusenbery was also involved in a 2016 automobile accident, but did not suffer any injuries.

Dusenbery completed the Department of Corrections training academy in 2013 and reported "it was 'the most physical thing [she had] ever done in [her] life.'" After completing the academy, she became employed by the Department of Corrections and was assigned to Wagner as a corrections officer.

The ALJ further found that on January 4, 2015, Dusenbery "was injured when she attempted to open a heavy, metal utility closet door, as part of her duties" at Wagner. The ALJ explained Dusenbery experienced a "sharp, burning

pain" in her right bicep and right shoulder during the incident, and was examined and treated at the hospital. Dusenbery underwent three months of physical therapy, her injuries healed, and she returned to work in May 2015. The ALJ concluded Dusenbery did not suffer a total and permanent disability as a result of the January 4, 2015 incident.[3]

Dusenbery was later transferred to South Woods where, on August 6, 2016, she was injured during the performance of duties as a corrections officer. The ALJ found that during the search of cell, Dusenbery removed an inmate and "began to pat search him." To conduct the pat down search, Dusenbery "had the inmate stand in front of her with his legs spread," "[s]he placed her left leg in between the inmate's legs," and she began patting down the inmate with her right hand. The inmate began moving, and Dusenbery ordered the inmate to stop. The inmate defied the orders and continued to move as Dusenbery attempted to conduct the pat down search. The ALJ found the inmate "elbowed [Dusenbery] in the right temple," and, as she and the inmate fell to the ground, Dusenbery's

---

[3] We do not address the ALJ's determination, which was adopted by the Board in its final decision, that Dusenbery did not suffer a total and permanent disability as a result of the January 4, 2015 incident. Dusenbery does not challenge that determination on appeal. See Drinker Biddle & Reath LLP v. N.J. Dept. of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not addressed in a party's merits brief on appeal is deemed abandoned).

"left foot remained planted and her body turned to the right."  The ALJ also found Dusenbery immediately felt pain in her left hip and groin but, after a three-minute struggle, she was able to restrain and handcuff the inmate.

The ALJ determined searching inmates was one of Dusenbery's "normal job responsibilities," and "[p]hysically restraining" inmates is a duty required of corrections officers.  The ALJ further found Dusenbery was in contact physically with the inmates on a daily basis, and she admitted a corrections officer requires the ability to physically maintain control of inmates and defend against assaults by inmates.

The ALJ also determined Dusenbery suffered injuries to her left leg and hip, right arm and shoulder, and back.  Based on the evidence and the testimony of the parties' respective medical experts, the ALJ determined that, as a result of Dusenbery's injuries, she "can no longer do her job duties and participate in household and recreational activities."  The ALJ concluded Dusenbery is permanently and totally disabled from performing the duties of a corrections officer as a result of the August 6, 2016 South Woods incident.[4]   The ALJ

---

[4]  The ALJ made detailed findings supporting her conclusion Dusenbery is totally and permanently disabled as a result of the August 6, 2016 incident.  In sum, the ALJ accepted the expert testimony of Dusenbery's expert concerning the nature, extent, and causes of her disability, and rejected as not credible the

further found Dusenbery's disability is not the result of her willful negligence and the traumatic incident that caused her disability occurred during the performance of her regular or assigned duties, is identifiable as to time and place, and was caused by a circumstance external to Dusenbery.

The ALJ determined Dusenbery is not entitled to an accidental disability retirement pension based on a single finding—that the August 6, 2016 "traumatic event" that caused the disability "was not undesigned and unexpected." The ALJ found the incident was not undesigned and unexpected because the corrections officer job description required that Dusenbery physically restrain and interact with inmates, and Dusenbery testified the academy training was "physically grueling" and a corrections officer's "job is physical." The ALJ further based her conclusion on evidence Dusenbery "was specifically trained how to physically and verbally conduct the search of an inmate," and she used the techniques she was taught "to pat search the inmate."

The ALJ further reasoned the August 6, 2016 incident was not undesigned and unexpected because "whether [Dusenbery] anticipated that she would be

testimony of PFRS's expert. It is unnecessary to address the conflicting testimony, or the ALJ's analysis of it, because the Board accepts the ALJ's determination Dusenbery is totally and permanently disabled, and it awarded her an ordinary disability retirement pension on that basis.

A-4154-19

assaulted by [the] inmate during the search is not dispositive," and Dusenbery "could certainly [have] anticipated that an inmate would become physically combative during such a search." The ALJ found a corrections officer "is required to physically engage with inmates, who may be combative," and therefore nothing that occurred during the incident "was extraordinary or unexpected."

The ALJ concluded Dusenbery is not entitled to an accidental disability retirement pension. Dusenbery and PFRS filed exceptions to the ALJ's decision and recommendation.

In its final decision, the Board adopted the ALJ's findings, and denied Dusenbery's application for an accidental disability retirement pension. The Board found Dusenbery is entitled to an ordinary disability retirement pension because she "is considered totally and permanently disabled." This appeal followed.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of an "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, "an appellate court ordinarily should not disturb an administrative agency's

determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980), overruled on other grounds by Maynard v. Bd. of Trs., Teachers' Pension & Annuity Fund, 113 N.J. 169 (1988). We review de novo "an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27.

N.J.S.A. 43:16A-7(a)(1) authorizes an award of an accidental disability pension to a PFRS member provided

> the medical board, after a medical examination of such member, [certifies] that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence

and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.

[N.J.S.A. 43:16A-7(a)(1).]

In Richardson, the Court explained that to establish an entitlement to accidental disability retirement benefits under N.J.S.A. 43:16A-7(a)(1), a claimant must prove:

1. that [s]he is permanently and totally disabled;

2. as a direct result of a traumatic event that is

   a. identifiable as to time and place,

   b. undesigned and unexpected, and

   c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.

[192 N.J. at 212-13.]

Pertinent here is the requirement that an applicant prove the permanent disability is the result of a traumatic event that is "undesigned and unexpected." See ibid. That is because the Board, through its adoption of the ALJ's findings, determined Dusenbery sustained her burden of proving each of the other elements necessary for an entitlement to accidental disability benefits, and it denied her accidental disability benefits solely based on a finding she failed to prove the event the traumatic event that caused her permanent disability was undesigned and unexpected.

In Richardson, the PFRS member was a corrections officer who suffered a permanent disability during a scuffle with an inmate who resisted being handcuffed. Id. at 193. As the officer reached for his handcuffs, the inmate "forcefully jerked up from the ground, knocking [the officer] backward," causing the officer "to fall back onto his left hand and hyper-extend his wrist." Ibid. The Court determined the officer's injury satisfied the standard for an accidental disability retirement pension because, "[w]hile performing the regular tasks of his job as a corrections officer, subduing an inmate, [he] was thrown to the floor and hyperextended his wrist." Id. at 214. The wrist injury resulted in a total and permanent disability.

Here, the pertinent facts are identical to those presented in <u>Richardson</u>. During the performance of her duties, Dusenbery attempted to conduct a pat down search of an inmate, who resisted and struck her in the head with his elbow causing her to fall and suffer injuries that resulted in her total and permanent disability. In finding the incident was not undesigned and expected, the ALJ ignored the Court's holding in <u>Richardson</u>.

The ALJ found the traumatic event that resulted in Dusenbery's disability was not undesigned and unexpected because a correction officer's regular duties include searching inmates and physically restraining inmates and, as a result, there is nothing undesigned or unexpected about scuffling with a defiant inmate and suffering injuries. In <u>Richardson</u>, the Board relied on the same reasoning employed by the ALJ here, and the Court rejected it. <u>See</u> <u>id.</u> at 213-215.

The Court explained the Board contended "that because subduing an inmate is part of the anticipated work of a corrections officer and was not unexpected or unintended, Richardson could not satisfy the traumatic event standard." <u>Id.</u> at 213. The Court determined the Board's reasoning, which the ALJ employed here to deny Dusenbery's application for an accidental disability pension, is founded on "a misreading of the statute, which <u>requires</u> that the traumatic event occur 'during and as a result of the performance of [the

13

member's] regular or assigned duties.'" Id. at 213 (quoting N.J.S.A. 43:16A-7(a)(1)).

The Court further explained that "the fact that a member is injured while performing his [or her] ordinary duties does not disqualify him [or her] from receiving accidental disability benefits; some injuries sustained during ordinary work effort will pass muster and others will not." Id. at 214. The Court observed that a policeman "shot while pursuing a subject," satisfies the undesigned and unexpected standard, and, as noted, the Court held that an officer who suffers a permanent disability when accosted by a resisting inmate satisfies the standard as well. Ibid. The Court held that the determinative "inquiry is whether, during the regular performance of his [or her] job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Ibid.

The ALJ and the Board did not apply the correct legal standard in denying Dusenbery's application for an accidental disability retirement pension. Contrary to the ALJ's conclusion, Dusenbery did not fail to satisfy the undesigned and unexpected standard because she was injured during the regular performance of her duties in searching the inmate. Like the officer in

Richardson, Dusenbery suffered her disability because she "was thrown to the floor" as the result on an assault by a defiant and assaultive inmate. Id. at 214. She did not suffer her disability as "the result of pre-existing disease alone or in combination with the work"; she suffered her injuries by being launched onto the ground by the inmate's assault to her head. Under the Richardson standard, she established the August 6, 2016 incident was undesigned and unexpected.

In sum, the ALJ's legal conclusion, which the Board adopted, that the traumatic event resulting in Dusenbery's disability was undesigned and unexpected ignores the Court's holding in Richardson and misapplies the applicable legal standard. We therefore reverse the Board's final decision denying Dusenbery's application for an accidental disability retirement pension. See In re Virtua-West Jersey Hosp., 194 N.J. at 422 (explaining a reviewing court will reverse a final agency decision based on a misapplication of the law).

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4154-19