**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3651-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

OMAR GALVEZ, a/k/a
ORLANDO ROMERO,
OMAR GAULEZ, OMAR
GALVEZ-VELASQUEZ,
and OMAR GALVEZ-
VELAZQUEZ,

     Defendant-Appellant.

_____

Submitted March 13, 2024 – Decided April 11, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 15-06-0680.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (David M. Galemba, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Omar Galvez of the first-degree murder of Jennifer Cruz-Chavez (the victim) and the court imposed a sixty-five-year sentence subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We affirmed defendant's conviction and remanded for reconsideration of the sentencing court's order requiring that he pay restitution. State v. Galvez, No. A-2121-16 (App. Div. May 17, 2018) (slip op. at 18). The Supreme Court denied defendant's petition for certification. State v. Galvez, 236 N.J. 221 (2018).

Defendant filed a post-conviction relief (PCR) petition alleging in part ineffective assistance of his trial counsel. Defendant's PCR counsel more particularly argued trial counsel had been ineffective by failing to move to suppress evidence seized from defendant's residence and two vehicles parked outside the residence during the execution of a search warrant and by failing to

call as a witness at trial, Dr. Zhongxue Hua,[1] a forensic pathologist who had been retained as an expert on defendant's behalf.

The court heard oral argument on defendant's claim trial counsel had been ineffective by failing to file a suppression motion and the court conducted an evidentiary hearing limited to defendant's claim trial counsel had been ineffective by failing to call Dr. Hua as a witness. In a detailed written opinion following the hearing, the court rejected defendant's claims. Defendant appeals from the court's order denying the PCR petition.[2] We affirm.

## I.

On August 24, 2014, in a wooded area in Fairfield Township, hunters found the victim's body and called the police. New Jersey State Police responded to the scene, located the victim's body, and observed blood spatter on

---

[1] The trial court transcripts refer to Dr. Hua as Dr. Wahl. We find this to be a transcription error. It is undisputed that Dr. Hua is the putative witness defendant claims his counsel erred by failing to call as a trial witness.

[2] Defendant offered other claims supporting his PCR petition, each of which was rejected by the PCR court. We do not address those claims because defendant does not argue on appeal that the court erred by rejecting them as grounds supporting PCR. See generally Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining an issue not briefed on appeal is deemed abandoned).

vegetation around the body. The State Police also observed that the victim "had sustained severe injuries to the head area."

The State Police later identified the victim and questioned multiple individuals who knew her. During their investigation, the State Police learned the victim had been at a party on the evening before her body was found and had left the party with two "Mexican" males in a van that was variously described as "gray" and as a "white Town [&] Country minivan."

Laticia Lopez testified she lived with defendant—whom she described as her "prior partner" with whom she shared children—and Jose Martinez at a Bridgeton residence at the time of the murder and she had separately attended the party but had left before defendant arrived.[3] Lopez testified defendant had not returned home following the party until "the early hours [of the morning] when he came back to sleep."

She also testified that at that time, they had three vehicles at the residence, including a white minivan. Prior to the evening of the party, Martinez had

_____

[3] Lopez also referred to Jose Martinez as Jose Umberto, and Martinez is otherwise referred to as Jose Umberto Martinez in the record on appeal. A grand jury charged defendant and Martinez with the victim's murder in the same indictment. The court severed the charges against defendant from those against Martinez and their cases proceeded separately.

A-3651-21

parked the minivan "wherever he would find a space" but following the party and the discovery of the victim's body, Martinez parked the vehicle "behind the fence" on the property. Lopez also testified that defendant never drove the white minivan and only Martinez drove it.[4]

The State Police arrested defendant on September 10, 2014. Following the arrest, a State Police detective interrogated defendant. During the interrogation, defendant admitted he had been present when the victim was murdered but claimed Martinez had committed the crime.

During the interrogation, defendant explained that he and Martinez had traveled to the party in the white minivan. According to defendant, as he and Martinez left the party, the victim approached them on the street and asked if they "wanted sex." The victim then entered the minivan, and Martinez drove the minivan with the victim and defendant to a wooded area. Defendant reported that Martinez exited the minivan with the victim to have sex, and defendant later saw Martinez striking the victim with "something in his hand."

Defendant further explained that he exited the minivan and Martinez said the victim had stolen from him. Defendant told the detective that he had

---

[4] Lopez's trial testimony contradicted her statement to the State Police that defendant had driven the white minivan on the evening of the party and the victim's murder.

A-3651-21

"grabbed" the victim; she "tried to . . . wrestle[]"; she fell to the ground; he "kicked her once" in the head; Martinez continued to hit her with a hammer and told defendant he had "killed her"; and he and Martinez left the scene in the minivan, leaving the victim behind. Defendant also reported the sneakers that "look like boots" he had worn on the evening of the murder were at his home. A recording of defendant's interrogation by the State Police was played for the jury during the trial.

Pursuant to a search warrant issued based on an affidavit submitted by a State Police detective, police searched the residence defendant had shared with Lopez and Martinez. During execution of the search warrant, the State Police seized, among other things, a white Town and Country minivan from the residence and a pair of work boots that defendant allegedly had worn on the evening of the murder. Two spots of blood, which testing showed contained the victim's DNA, were found in the minivan. DNA testing of the victim's body also revealed Martinez's semen was inside her vagina.

Dr. Ian Hood, a forensic pathologist and then-Cumberland County Medical Examiner, performed the victim's autopsy and observed significant injuries to her face as well as "considerable destruction of the bones beneath" her face. According to Dr. Hood, the strikes to the victim's head were "made

with great force," her jaws had been shattered, the bridge of her nose was collapsed and crushed, she had bilateral black eyes, and her teeth had been broken.

When asked at trial what objects could have caused the injuries, Dr. Hood testified there were many injuries to the victim's head and face caused by a "heavy object that provides fairly focal, focused, sharp or hard force," such as a hammer. Dr. Hood also testified to a reasonable degree of medical certainty that those wounds were caused either by a hammer or "another heavy round object" that is about an "inch in diameter."

Dr. Hood testified the victim had suffered from other injuries, and if they had been caused by a boot, he would have "see[n] far more diffuse bruising." However, he noted there were two bruises that could have been made by kicking the victim with "a shod foot" or a shoe "with a reasonable sole or toe or heel to it." However, Dr. Hood explained he could not testify to a reasonable degree of medical certainty that those injuries were caused by "a boot, a sneaker, or anything else" because there was "no way [he could] say that for sure."

On cross-examination, Dr. Hood testified that if a single kick to the victim's head had caused her death, he would expect to see "evidence of swirling of the brain with diffuse axonal injury," but the victim had not suffered "those

7

kinds of injuries." Dr. Hood further acknowledged he could not "say for sure what actually killed" the victim, but he opined her death was caused by asphyxia, a terminal seizure resulting from her injuries, or a loss of blood. He attributed the cause of death to "[m]ultiple blunt and sharp force injuries of the head."

Defendant did not present any witnesses at trial. As noted, the jury found defendant guilty of first-degree murder, and the court later imposed a lengthy sentence. Following our affirmance of his conviction and sentence on his direct appeal, and the Supreme Court's denial of his petition for certification, defendant filed a PCR petition which, as supplemented by the arguments of his PCR counsel, asserted trial counsel had been ineffective by failing to move to suppress the evidence seized from his home during the execution of the search warrant and by failing to call Dr. Hua as an expert witness at trial.

The PCR court heard argument on the petition and explained it would reserve decision on defendant's claim trial counsel had been ineffective by failing to file a suppression motion, but it would conduct an evidentiary hearing on defendant's claim trial counsel had been ineffective by failing to call Dr. Hua as a trial witness. At the evidentiary hearing, trial counsel testified concerning her decision not to call Dr. Hua as a witness and defendant testified in support of his claim trial counsel was ineffective for making that decision.

8

More particularly, defendant testified he did not recall having any conversations with trial counsel regarding an expert witness testifying at trial. Defendant asserted trial counsel did not discuss the autopsy report with him or bring to his attention Dr. Hua's expert report. Defendant further stated that trial counsel had visited him only once or twice prior to his 2016 trial, even though she had represented him since his 2014 arrest. Defendant testified that had he known about Dr. Hua's expert report, he would have wanted Dr. Hua called as a witness to testify in his defense. Defendant also testified counsel did not review the forensic evidence with him.

Trial counsel testified she had been an attorney for six or seven years, had handled hundreds of matters, and had tried six or seven cases prior to defendant's trial. She explained she had communicated with defendant "with the help of one of the [c]ourt interpreters" when she was at the courthouse and she also had gone "over to the jail to speak with him." Trial counsel testified she had visited defendant approximately five times in jail and had spoken with him "dozens" of times prior to court appearances through a court interpreter or through the "Language Line" translation service. Trial counsel also had reviewed the discovery with defendant and provided him with updates about his case on multiple occasions prior to trial.

Trial counsel believed "the State had a fairly strong case" against defendant because defendant "had given a statement and he pretty much admitted that he was there when [the murder] happened."  Trial counsel also testified that when the court denied her motion to suppress defendant's statement to the State Police, she "had to use his statement to the best of [her] abilities in the trial because he had given [the] statement."

Trial counsel also explained that her decision not to call Dr. Hua as a witness at trial was based on Dr. Hood's testimony.  Counsel stated Dr. Hood's autopsy report was neutral because "it was pretty consistent with the statement that [defendant] had given."  Trial counsel explained she "wanted the jury to take [defendant's] statement for what it was and believe . . . that he was not an active participant in the actual murder; that he was not an accomplice . . . [and] that he had no knowledge of" Martinez's intent to commit a murder at any time prior to its occurrence.

According to counsel, the prosecutor notified her prior to trial that Dr. Hood had indicated some of the injuries could have been caused by a "shod object" or a "shod foot."  As a result, trial counsel understood that Dr. Hood "potentially was not going to testify consistently within the four corners of his report."  Counsel explained that "if the autopsy or the medical examiner's

information and testimony was . . . going to change to include that [the victim's death] could have been . . . caused by essentially multiple kicks to the face, that was quite concerning, . . . as far as [her] strategy for defense was concerned" because that putative evidence would contradict defendant's statement he had kicked the victim only once. When trial counsel became aware of that potential testimony from Dr. Hood, she "requested a new trial date[] so that [she] could explore the information with [her] own expert." The court granted the request.

Trial counsel retained Dr. Hua on defendant's behalf for a consultation. Counsel spoke with Dr. Hua and provided him with the autopsy photographs. According to trial counsel, she then obtained a "brief opinion" from Dr. Hua, and he offered her "pointers for cross-examination purposes."

Dr. Hua informed trial counsel that had kicking the victim been the cause of death, there would have been "things . . . found during the autopsy" that were not shown in Dr. Hood's autopsy report. Dr. Hua "also indicated that an anthropologist would be able to determine whether the bones were crushed by . . . the hammer or . . . the shod object." Dr. Hua told counsel there was no evidence the victim had drowned in her own blood and such evidence "would have been evident had the kicks to [her] face been the cause of death."

Dr. Hua prepared an expert report for use in the event counsel determined his testimony was required at trial. In his report, Dr. Hua opined as follows:

> Although with slight variations in their gross characteristics, most of her facial/scalp lacerations and skull fractures are consistent with multiple, repeated, and overlapping blunt impact injuries by a hammer. Also, most of her facial/scalp lacerations and skull fractures are inconsistent with blunt impact injuries by the referred pair of boots. The observed facial fractures reflected multiple, repeated, and overlapping blunt impact injuries; however, in the provided autopsy photographs, these facial fractures contained no distinctive or characteristic gross features.

Dr. Hua also found "that the provided autopsy photographs did not illustrate any conclusive evidence of multiple, repeated, and overlapping kicking by the refer[r]ed pair of black boots."

Trial counsel explained Dr. Hood had testified at trial that a single kick could not have caused the victim's death because, if it had, "there would have been some evidence of like a swirling pattern in the brain." Also, following her cross examination of Dr. Hood, trial counsel had determined "there was not a need for another expert to come in and testify" because Dr. Hood had not testified the victim's "injuries were caused by a shod object." Trial counsel explained that there were certain "[h]orrific pictures" from the autopsy she wanted to prevent the jury from seeing, and she understood that if she called Dr.

Hua as a witness, those photographs potentially could have been shown to the jury.

Based on those considerations, trial counsel decided not to call Dr. Hua as an expert witness. Contrary to defendant's testimony at the PCR hearing, trial counsel further testified she was "sure" she had discussed with defendant her consultation with an expert, reviewed with defendant the information from Dr. Hua's report, and spoken with defendant about trial strategy following Dr. Hood's trial testimony. Trial counsel did not recall defendant's position regarding calling an expert witness at trial.

Trial counsel also explained that her strategy at trial was to persuade the jury to accept defendant's statement to the State Police "that he was not an active participant in the actual murder," "he was not an accomplice because there was no discussion prior to the murder" that Martinez intended to or would kill the victim, and defendant's only involvement had been to kick the victim once and that single kick did not contribute to the cause of the victim's death.

The PCR court issued a detailed decision denying defendant's PCR petition, finding defendant had not established trial counsel had been ineffective by failing to file a motion to suppress evidence or call Dr. Hua as an expert witness. The court rejected defendant's claim trial counsel had been ineffective

A-3651-21

by failing to move to suppress the evidence seized from defendant's home and the white minivan following execution of a search warrant.

Defendant had argued the search-warrant affidavit did not establish probable cause to seize or search the white minivan at defendant's home because the affidavit included conflicting information from various witnesses concerning the color of the van observed at the party. The PCR court denied the claim, finding defendant had failed to present a prima facie case establishing a reasonable probability that the trial court would have granted a suppression motion and the result of his trial would have been different.

The court also found defendant had failed to make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit," such that a hearing concerning the validity of the search warrant was required under Franks v. Delaware, 438 U.S. 154, 155-56 (1978). The court analyzed the facts set forth in the affidavit, including that: a witness had reported the victim entered a van with a "Hispanic" man and departed the area of the party; another witness stated that two "Hispanic" males arrived at the party in a gray minivan and the victim approached the males and gave them a hug; another witness reported two "Hispanic" males—Omar, whom the witness

identified as defendant and Beto—arrived at the party, and the witness drove the State Police to the Bridgeton residence that was defendant's "possible address"; and the State Police later found Martinez and Lopez at the address.

The search-warrant affidavit also noted the investigation had identified two possible vehicles involved in the commission of the murder, a silver minivan described by one witness and a white minivan, which Lopez had told the State Police defendant was "operating . . . on the night" of the murder. The search-warrant affidavit further noted two vehicles—both minivans—were found at defendant's residence "fitting the description which was provided by the witnesses as the vehicle [the victim] left the party in with the Hispanic males."

In sum, the PCR court determined the warrant affidavit had established probable cause to search the residence and seize and search the vehicles the State Police recovered at the residence. The court therefore determined trial counsel had not been ineffective by failing to file a meritless suppression motion.

The PCR court also rejected defendant's claim trial counsel had been ineffective by opting not to call Dr. Hua as a witness. The court found Dr. Hua and Dr. Hood had made similar determinations about the cause of the victim's death. That is, Dr. Hood testified he could not determine, based on the nature of the victim's injuries, that she had been kicked, and he did not offer any opinion

15

to a reasonable degree of medical certainty that kicking the victim contributed to her death. Rather, he testified the victim suffered multiple injuries to her face and head with a hammer, or an item similar to a hammer, and the evidence otherwise showed defendant had told the police Martinez struck the victim with a hammer and he had kicked the victim only once.

In his report, Dr. Hua similarly stated the evidence did not establish the victim suffered from repeated kicks to the head and face. Thus, the PCR court found there was no significant difference of opinion between Dr. Hood, as expressed in his trial testimony, and Dr. Hua's putative testimony, as reflected in his report.

The court therefore concluded trial counsel had not been ineffective by failing to call Dr. Hua, whose testimony in all important respects would have done nothing more than confirm the State's expert's testimony. Moreover, the court found that trial counsel had made a reasoned strategic trial decision not to call Dr. Hua because doing so may have opened the door to the introduction of additional horrific autopsy photographs.

The court also noted the State's claim that the evidence concerning the extent of defendant's kicking of the victim was of no moment because defendant's presence at the scene, his admission he had held the victim while

16

Martinez struck her, and his flight from the scene with Martinez while knowing Martinez had killed the victim, supported a finding of defendant's guilt as an accomplice. Thus, the court concluded defendant had failed to sustain his burden of demonstrating he was prejudiced by any alleged erroneous decision by trial counsel not to call Dr. Hua as a witness.

The court entered an order denying defendant's PCR petition. This appeal followed. Defendant offers the following arguments for our consideration:

POINT I

AS DEFENDANT HAD ESTABLISHED THAT HE WAS DENIED EFFECTIVE LEGAL REPRESENTATION WHEN HIS ATTORNEY FAILED TO PRESENT THE EXPERT TESTIMONY OF DR. HUA AND THAT HE WAS PREJUDICED THEREBY BECAUSE THERE WAS A REASONABLE PROBABILITY THAT THE OUTCOME OF THE TRIAL WOULD HAVE BEEN DIFFERENT HAD DR. HUA TESTIFIED, THE PCR COURT ERRED WHEN IT DENIED HIS PETITION FOR [PCR].

POINT II

AS DEFENDANT HAD PRESENTED A PRIMA FACIE CASE THAT TRIAL COUNSEL WAS INEFFECTIVE BECAUSE [S]HE FAILED TO MOVE TO SUPPRESS THE WORK BOOTS LOCATED IN OR NEAR HIS HOME AND THERE WAS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE, THE PCR COURT ERRED WHEN IT

17

DENIED THE CLAIM WITHOUT FIRST HOLDING
AN EVIDENTIARY HEARING.

II.

In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court established a two-part standard, later adopted under the New Jersey Constitution by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel. Under the standard's first prong, a petitioner must show counsel's performance was deficient by demonstrating counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88.

Under the "'second, and far more difficult prong of the'" Strickland standard, State v. Gideon, 244 N.J. 538, 550 (2021) (quoting State v. Preciose, 129 N.J. 451, 463 (1992)), a defendant "'must show that the deficient performance prejudiced the defense[,]'" State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. 687). To establish prejudice, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694). Proof of prejudice under Strickland's second prong "'is an exacting standard.'" Id. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). A defendant seeking PCR "must 'affirmatively prove prejudice'" satisfying the second prong of the Strickland standard. Ibid. (quoting Strickland, 466 U.S. at 693).

A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition founded on an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700. "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citations omitted).

We first consider defendant's contention the PCR court erred by rejecting his claim trial counsel had been ineffective by failing to file a motion to suppress evidence seized during the search of defendant's Bridgeton residence and the vehicles at the residence. Defendant argued before the PCR court that he had been prejudiced by trial counsel's failure to move to suppress evidence—specifically two spots of the victim's blood—that had been found in the white

minivan that was seized during execution of the search warrant. However, in his brief on appeal, defendant makes no mention of the blood found in the white minivan and does not argue counsel had been ineffective by failing to move to suppress that evidence. Instead, he claims he was prejudiced by trial counsel's failure to move to suppress evidence concerning boots that were recovered from his residence during execution of the warrant. Defendant further contends counsel's failure to move to suppress the evidence deprived him of his right to challenge the validity of the warrant at a Franks hearing. We are unpersuaded by defendant's arguments.

"Although a demonstration of prejudice constitutes the second part of the Strickland analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." Gaitan, 209 N.J. at 350 (citation omitted). Applying that principle, we perceive no error in the PCR court's rejection of defendant's suppression-motion claim because defendant fails to make an affirmative showing he suffered any prejudice under the Strickland standard as a result of the alleged error. See Gideon, 244 N.J. at 550-51.

Defendant argues on appeal he suffered prejudice because counsel's failure to file the suppression motion resulted in the admission of evidence at trial concerning the work boots recovered from his residence. Defendant contends the work "boots were the only physical evidence used to tie . . . defendant to [the] murder" and "[h]ad trial counsel obtained suppression of the boots, the jury would have had no physical evidence tying him to the murder, and the result [of this trial] clearly would have been different."

Defendant's argument fails because the State did not elicit any direct testimony from its witnesses concerning the work boots or introduce the boots in evidence during its case at trial. Rather, the evidence concerning the boots consisted of defendant's statement to the State Police during which he said the sneakers—which he said looked like boots—he had worn on the night of the victim's murder were at his home. The parties also agreed to the admission of a photograph of the boots, with a stipulation that was read to the jury stating the photograph is "of the boots that were recovered from [d]efendant's residence."

Defendant's trial counsel elicited the only testimony at trial concerning the boots and, in doing so, established they did not support defendant's guilt of the murder. More particularly, during her cross-examination of a State Police detective, trial counsel elicited confirmation that defendant had told the State

Police that the clothing and boots he had worn on the evening of the murder were at his home. Through cross-examination, trial counsel further established defendant had said he had not worn the boots "since the night of the murder" and defendant had shown the police "exactly where [the boots] would be found" at his home. Based on counsel's further cross-examination, the detective acknowledged the boots had been collected and sent to the lab, and lab tests had established there "was absolutely no DNA on the boots," "[t]here was no blood evidence on the boots," and "[t]here was no human tissue that was found on the boots."

In other words, trial counsel raised the issue of the boots and their recovery at defendant's home to establish they contained no evidence tying defendant to the brutal injuries the victim had suffered to her head and face. Thus, the only evidence presented at trial concerning the boots indirectly supported defendant's statement to the police—that he had only kicked the victim once—and his defense at trial—that his admitted single kick to defendant's head had not caused the victim any injury such that the victim's blood, DNA, or human tissue were found on the boots. Given that defendant had admitted to the police that the boots he wore on the evening of the victim's murder were at his home, the limited testimony elicited concerning the boots

22

was not prejudicial to defendant because it supported his defense, was consistent with his statement to the police, and provided an added benefit of supporting the credibility of his statement to the State Police.

Based on that record, and in the absence of any affirmative showing of a reasonable probability that but for the testimony concerning the boots, the result of defendant's trial would have been different, see Gideon, 244 N.J. at 550-51, we agree with the court's rejection of defendant's claim trial counsel had been ineffective by failing to move to suppress the boots. Defendant's failure to satisfy his burden of affirmatively demonstrating prejudice under the second prong of the Strickland standard requires rejection of the claim on that basis alone. Strickland, 466 U.S. at 700; Gaitan, 209 N.J. at 350.

Although we do not need to reach this issue, we also find no merit to defendant's claim the court erred by finding defendant had failed to satisfy his burden of establishing counsel's performance was constitutionally deficient under Strickland's first prong. Defendant argues the court erred by rejecting his claim that trial counsel was ineffective by failing to request a Franks hearing because had the request been made, "it would have been successful, and the boots at defendant's residence would have been suppressed."

"In order to satisfy the Strickland standard when an ineffective assistance of counsel claim is based on the failure to file a suppression motion, a defendant must establish 'that [their] Fourth Amendment claim is meritorious.'" State v. O'Neal, 190 N.J. 601, 618-19 (2007) (quoting State v. Fisher, 156 N.J. 494, 501 (1998)); see also State v. Worlock, 117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel."). Here, defendant failed to sustain that burden because he did not demonstrate he had a meritorious motion entitling him to a hearing under Franks.

A Franks hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included . . . in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56. To sustain that burden, a defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171). It is only where a defendant also establishes "the allegedly false statement [was] necessary to the [issuing judge's] finding of probable cause, [does] the Fourth Amendment require[ ] that

a hearing be held at the defendant's request." State v. Desir, 245 N.J. 179, 196 (2021) (quoting Franks, 438 U.S. at 155-56).

In defendant's brief on appeal, he does not point to a single alleged false statement made by the affiant of the search-warrant affidavit that would have supported a motion for a Franks hearing. He does not contend the affiant made any false statements "knowingly and intentionally, or with reckless disregard of the truth," such that he would have been entitled to a Franks hearing if trial counsel had asked for one. 438 U.S. at 155-56.

Defendant merely picks through the affidavit and asserts that there were conflicts among certain statements made by witnesses to the State Police. He ignores, however, that "a Franks hearing is not directed at picking apart minor technical problems with a warrant application; it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents." State v. Broom-Smith, 406 N.J. Super. 228, 240 (App. Div. 2009). Defendant makes no showing of such wrongdoing here.

Defendant failed to carry his burden of demonstrating that the record supported the filing of a meritorious motion for a Franks hearing and, as a result, failed to establish trial counsel's performance was deficient under Strickland's first prong for opting not to file a motion wholly devoid of merit. O'Neal, 190

N.J. at 619; Worlock, 117 N.J. at 625.  Defendant's failure to demonstrate trial counsel's performance was deficient under the first prong of the Strickland standard provides a separate, but equally dispositive, basis to affirm the court's denial of his petition.[5]   See Gaitan, 209 N.J. at 350.

Defendant also argues the PCR court erred by denying his claim trial counsel had been ineffective by deciding not to call Dr. Hua as an expert witness at trial.  The argument is founded on the contention that Dr. Hua "could" have testified in accordance with his report that the "autopsy photographs did not illustrate any conclusive evidence of multiple, repeated, and overlapping kicking by the . . . black boots" and the jury "could therefore have found that the defendant's kick was not the proximate cause of the victim's death."  In our view, the PCR court correctly rejected the claim because defendant did not sustain his burden under either prong of the Strickland standard.

---

[5]  We note defendant was not entitled to an evidentiary hearing on his claim trial counsel was ineffective by failing to file a motion to suppress the evidence seized during the execution of the search warrant because he failed to establish a prima facie claim under the Strickland standard.  See R. 3:22-10(b) (providing a court should hold an evidentiary hearing on a PCR petition only if the defendant establishes a prima facie claim in support of PCR, "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and "an evidentiary hearing is necessary to resolve the claims for relief"); see generally State v. Porter, 216 N.J. 343, 354 (App. Div. 2013).

A-3651-21

Defendant did not affirmatively demonstrate he suffered prejudice under the Strickland standard based on trial counsel's decision not to call Dr. Hua as a witness, and counsel's conclusory claims to the contrary on appeal are insufficient to satisfy defendant's burden. To the extent the State attempted to claim defendant was guilty of the murder because he contributed to or caused the victim's death by kicking her, the State had to prove those facts beyond a reasonable doubt. State v. Wakefield, 190 N.J. 397, 469-70 (2007).

Dr. Hood's testimony did not help that cause and, in fact, undermined it. He testified that if the victim had been kicked in the head such that it caused a fatal injury, he would have observed injuries to the brain not present in the victim. Dr. Hood also testified he could not opine to a reasonable degree of medical certainty that the victim's injuries were caused by kicking at all.

Following Dr. Hood's testimony, the State lacked any competent evidence that the purported kicking of the victim, by defendant or anyone else, caused or contributed to the victim's death. Without such evidence, Dr. Hua's putative testimony, as set forth in his report, would have only confirmed what Dr. Hood had found—that the autopsy did not reveal any evidence supporting a finding the victim's death was caused by kicks to the head. Thus, the record at trial does not permit a reasoned conclusion there is a reasonable probability that but for

trial counsel's purported error in deciding not to call Dr. Hua as a witness, the result of the trial would have been different, and defendant otherwise also failed to make an affirmative showing he suffered any prejudice as a result of trial counsel's decision. Defendant therefore failed to satisfy his burden under Strickland's second prong, and the court correctly rejected the claim for that reason. See Strickland, 466 U.S. 687; Gideon, 244 N.J. at 550-51.

We also observe that trial counsel's decision not to call Dr. Hua as a witness did not result in prejudice under Strickland's second prong because the evidence—primarily defendant's statement to the police—otherwise established defendant's guilt of the murder as Martinez's accomplice regardless of whether defendant had kicked the victim in the head. Defendant admitted traveling to the woods with Martinez and the victim and observing Martinez striking the victim as defendant first sat in the vehicle. According to defendant's account of the events, he did not remain in the vehicle after he saw Martinez striking the victim in the head with the object in his hand. Instead, defendant exited the vehicle and joined the fray, grabbing the victim as she "wrestle[d]" and as Martinez continued striking her as she fell from defendant's grasp to the ground. Defendant also admitted kicking the victim once as she laid on the ground after she fell from his grasp. And, after Martinez continued to strike the victim, and

said he had killed her, defendant and Martinez fled from the scene together in the minivan and returned to residence they shared, where defendant then went to bed.

Defendant's attempt to support his ineffective-assistance claim based on trial counsel's decision not to call Dr. Hua as a witness fails to account for that evidence, which overwhelmingly supported a finding he was guilty as an accomplice. Thus, although the absence of Dr. Hua's testimony concerning whether the victim had been kicked did not result in prejudice under the Strickland standard because the State's expert had testified there was no evidence a kick caused injuries to the victim, the lack of Dr. Hua's putative testimony did not result in prejudice also because defendant had otherwise admitted sufficient facts establishing his guilt as an accomplice. Defendant's failure to establish he suffered prejudice as the result of his trial counsel's purported error in failing to call Dr. Hua as a witness required the PCR court's rejection of his claim. Strickland, 466 U.S. at 700.

Defendant also failed to demonstrate his counsel's performance was deficient under the first prong of the Strickland standard. Indeed, for the reasons we have noted, Dr. Hua's testimony would not have offered anything of significance that did not already exist in the record following Dr. Hood's

A-3651-21

testimony, and counsel's performance is not deficient by failing to call a witness that would not have mattered. State v. L.A., 433 N.J. Super. 1, 15-16 (App. Div. 2013) (explaining the court must determine "whether there is a reasonable probability that, but for the attorney's failure to call the witness, the result would have been different[;] that is, there would have been reasonable doubt about the defendant's guilt").

Moreover, as the PCR court found, trial counsel's decision not to call Dr. Hua represented a thoughtful and reasoned strategic trial decision that does not provide grounds for an ineffective assistance of counsel claim. See State v. Arthur, 184 N.J. 307, 319 (2005); State v. Savage, 120 N.J. 594, 617-18 (1990). Defendant's statement to the State Police, his admitted presence at the murder scene, his description of his physical interaction with the victim at the scene, and his detailed description of the victim's murder provided very difficult circumstances for the defense. Although there was a dearth of physical evidence tying him to the murder scene, defendant's description of the location of the murder and the manner in which the murder was committed provided details only a person who had been present would have known. Trial counsel was therefore confronted with difficult choices about the best strategy to employ at trial. As trial counsel explained at the PCR hearing, calling Dr. Hua presented

a risk that graphic and what she described as "horrific" photos that had not been introduced as evidence by the State would be presented without Dr. Hua's testimony providing any counterbalancing benefit to the defense.

Based on the record presented and trial counsel's testimony at the PCR hearing, we discern no error in the court's determination defendant failed to demonstrate trial counsel's performance was deficient by opting not to call Dr. Hua as a witness.  See State v. Castagna, 187 N.J. 293, 314 (2006) (explaining "[t]he quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt").  Defendant made no showing trial counsel's decision was not "within the range of competence demanded of attorneys in criminal cases," "fell below an objective standard of reasonableness," or "so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686-88.

A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'"  Id. at 689

31

(citation omitted). The PCR court correctly determined defendant failed to sustain that burden and, for that reason, properly concluded defendant failed to satisfy the first prong of the <u>Strickland</u> standard.

In sum, defendant failed to sustain his burden under the <u>Strickland</u> standard to establish his ineffective assistance of counsel claims. We therefore affirm the court's order denying defendant's PCR petition. We have considered all of defendant's arguments on appeal and, to the extent we have not expressly addressed any of them, we have determined they are without sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3651-21